JAMES T. CROUSE AND MINEO & CROUSE, PLLC A/K/A MINEO & CROUSE, A NORTH CAROLINA GENERAL PARTNERSHIP, PLAINTIFFS-APPELLANTS v. ROBERT A. "TONY" MINEO, DEFENDANT-APPELLEE

No. COA07-344

(Filed 18 March 2008)

**1. Appeal and Error— appealability—allowance of motion to dismiss—interlocutory order—substantial right—possibility of inconsistent verdicts on same factual issues**

Although plaintiffs appeal from an interlocutory order granting defendant's motion to dismiss and from the orders dated 8 December 2006, the orders are immediately appealable because plaintiffs demonstrated the orders affect a substantial right since: (1) these claims raise factual issues that are identical to the factual issues raised by defendant's counterclaims which were not dismissed; and (2) the denial of an immediate appeal creates the potential for inconsistent verdicts resulting from two trials on the same factual issues.

**2. Corporations— professional limited liability company—standing to cause lawsuit by LLC**

A member-manager of a legal professional limited liability company (LLC) did not have authority to cause the LLC to institute an action against the other co-member-manager to recover assets of the LLC allegedly misappropriated by the co-

member-manager because the usual business of the LLC was the provision of legal services to clients; the filing of the action was not "carrying on in the usual way the business of the limited liability company" within the meaning of N.C.G.S. § 57C-3-23 but was a management decision; and defendant, as the other member-manager of the LLC, did not authorize or ratify the filing of the lawsuit.

3. **Corporations— professional limited liability company— petition for dissolution—standing to bring derivative action—sufficiency of pleadings**

Plaintiff member-manager of a professional limited liability company (LLC) did not cease to be a member of the LLC under N.C.G.S. § 57C-3-02(3)(d) at the time he filed a petition for dissolution of the LLC and he had standing to bring a derivative action against defendant co-member-manager on behalf of the LLC. Furthermore, plaintiff sufficiently pled with particularity the efforts he made to obtain the desired action and the reason for his failure to obtain that action as required by N.C.G.S. § 57C-8-01(b) for a derivative action where he alleged that plaintiff and defendant had agreed to divide the proceeds of legal cases handled by their LLC, that plaintiff demanded by two letters and by voice mail messages that defendant share such proceeds, and that defendant had refused to do so.

4. **Quantum Meruit— LLC member's individual action against co-member—statement of claim**

Plaintiff member of a legal professional limited liability company (LLC) stated an individual claim in quantum meruit against defendant co-member where he alleged that plaintiff provided services to defendant by lending money to defendant and to the LLC to assist defendant in the litigation of legal actions originated by defendant, that defendant accepted those services, and that defendant wrongfully refused to share the profits from those cases.

5. **Unfair Trade Practices— LLC member's individual action against co-member—failure to state claim**

Plaintiff member of a legal professional limited liability company (LLC) did not have standing to bring an individual claim against a co-member for unfair or deceptive trade practices where all of plaintiff's allegations of breach of fiduciary duty by defendant relate to the parties' relationship through the LLC.

CROUSE v. MINEO

[189 N.C. App. 232 (2008)]

**6. Appeal and Error— mootness—case remanded**

Although plaintiffs contend the trial court abused its discretion by denying their motion to amend the order dismissing their complaint, this issue is moot where the Court of Appeals held that plaintiff did not lack standing to file a derivative action and remanded as to that claim.

**7. Corporations— professional limited liability company— motion to appoint individual to wind up affairs**

The trial court did not err by denying plaintiffs' motion to appoint plaintiff individual to wind up the affairs of the pertinent PLLC because: (1) plaintiffs failed to cite case law or authority in support of their argument as required by N.C. R. App. P. 28(b)(6); and (2) under the unique circumstances existing at the time the trial court denied the motion and with plaintiffs' complaint having been dismissed in its entirety, it cannot be said that the trial court abused its discretion by denying plaintiffs' motion.

Appeal by Plaintiffs from order entered 18 August 2006 and from orders dated 8 December 2006 by Judge Carl R. Fox in Superior Court, Wake County. Heard in the Court of Appeals 17 October 2007.

*Smith Moore LLP, by Mark A. Finkelstein, for Plaintiffs-Appellants.*

*Mineo & Mineo, by Athena R. Mineo, for Defendant-Appellee.*

McGEE, Judge.

James T. Crouse (Mr. Crouse) and Mineo & Crouse, PLLC (collectively, Plaintiffs) filed a complaint against Robert A. "Tony" Mineo (Defendant) on 3 December 2004, alleging claims for breach of fiduciary duty and anticipatory breach of fiduciary duty, anticipatory breach of contract, an accounting, *quantum meruit, quantum valebant,* and unfair or deceptive trade practices. Plaintiffs alleged that at all relevant times, Mr. Crouse and Defendant were members of Mineo & Crouse, PLLC. Plaintiffs further alleged that Defendant misappropriated funds that were owed to Mineo & Crouse, PLLC or to Mr. Crouse.

Defendant filed an answer and counterclaims for an accounting and for *quantum meruit* dated 2 February 2005. Plaintiffs filed a reply on 1 April 2005. Defendant filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on 26 June 2006, alleging

[P]laintiffs have no standing to prosecute this action; that [Mr.] Crouse is not a proper party plaintiff and has not satisfied the conditions precedent to pursuing this action on behalf of Mineo & Crouse, PLLC; that Mineo & Crouse in any form is without authority to pursue this action; and that G.S. Chapter 75 is inapplicable to the dispute between these parties.

Plaintiffs filed a "motion for appointment of [Mr.] Crouse to wind up affairs of Mineo & Crouse, PLLC and motion to amend complaint to reflect this appointment" on 17 August 2006.

The trial court entered an order allowing Defendant's motion to dismiss on 21 August 2006. Plaintiffs filed a "motion to amend judgment pursuant to Rules 52(b) & 59(b) or in the alternative, for relief from judgment pursuant to Rule 60(b)(1) and 60(b)(6)," and the trial court denied the motion in an order dated 8 December 2006. The trial court also denied Plaintiffs' "motion for appointment of [Mr.] Crouse to wind up affairs of Mineo & Crouse, PLLC and motion to amend complaint to reflect this appointment" in an order dated 8 December 2006. The trial court did not dismiss Defendant's counterclaims. Plaintiffs appeal from the order granting Defendant's motion to dismiss and from the orders dated 8 December 2006.

[1] Plaintiffs acknowledge that the orders are interlocutory because the orders did not dispose of the case in its entirety. *See Sharpe v. Worland*, 351 N.C. 159, 161, 522 S.E.2d 577, 578 (1999). As a general rule, interlocutory orders are not immediately appealable. *Id.* However, immediate review of an interlocutory order is available in two limited circumstances: (1) where the trial court certifies, pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), that there is no just reason for delay of an appeal from a final order as to one or more, but not all, of the claims; and (2) where the interlocutory order affects a substantial right in accordance with N.C. Gen. Stat. § 1-277(a). *Sharpe*, 351 N.C. at 161-62, 522 S.E.2d at 579.

In the present case, the orders that Plaintiffs appeal do not contain a Rule 54(b) certification. Nevertheless, Plaintiffs contend that the interlocutory orders affect their substantial right to avoid the possibility of two trials on the same factual issues. An appellant bears the burden of demonstrating that an order will adversely affect a substantial right. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). "A substantial right . . . is considered affected if 'there are overlapping factual issues between the claim determined and any claims which have not yet been

determined' because such overlap creates the potential for inconsistent verdicts resulting from two trials on the same factual issues." *Liggett Group v. Sunas*, 113 N.C. App. 19, 24, 437 S.E.2d 674, 677 (1993) (quoting *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 26, 376 S.E.2d 488, 492, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989)).

Defendant filed counterclaims for an accounting and for *quantum meruit*, which have not been dismissed. However, these claims raise factual issues that are identical to the factual issues raised by Plaintiffs' claims, which were dismissed. Accordingly, Plaintiffs have demonstrated that the denial of an immediate appeal in the present case "creates the potential for inconsistent verdicts resulting from two trials on the same factual issues." *See Liggett Group*, 113 N.C. App. at 24, 437 S.E.2d at 677. Therefore, we hold that the orders Plaintiffs have appealed affect a substantial right and are immediately appealable.

I.

Plaintiffs argue the trial court erred by granting Defendant's motion to dismiss Plaintiffs' complaint for lack of standing. Plaintiffs contend that Defendant waived the defense of lack of standing by failing to specifically raise the defense in Defendant's answer. However, "[a] lack of standing may be challenged by motion to dismiss for failure to state a claim upon which relief may be granted." *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000). Plaintiffs' argument fails because the first defense in Defendant's answer clearly alleged that Plaintiffs' complaint failed to state a claim upon which relief may be granted. Defendant subsequently filed an additional motion to dismiss specifically contending the Plaintiffs "had no standing to prosecute this action." Furthermore, because standing is a "necessary prerequisite to a court's proper exercise of subject matter jurisdiction," a challenge to standing may be made at any time. *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878-79, *disc. review denied*, 356 N.C. 610, 574 S.E.2d 474 (2002).

A.

[2] Plaintiffs next argue the trial court erred in dismissing their complaint because the allegations in the complaint did not allege facts that could constitute a complete bar to recovery. Specifically, Plaintiffs argue that Mr. Crouse, in his capacity as a member-manager of Mineo & Crouse, PLLC, had the authority to cause Mineo & Crouse, PLLC to institute this lawsuit.

The standard of review of an order granting a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). "In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint 'unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'" *Holloman v. Harrelson*, 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (quoting *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987)), *disc. review denied*, 355 N.C. 748, 565 S.E.2d 665 (2002). Rule 12(b)(6) " 'generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery.'" *Id. Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 166 (1970) (citation omitted).

A limited liability company (LLC) is a " 'statutory form of business organization . . . that combines characteristics of business corporations and partnerships.'" *Hamby v. Profile Prods., L.L.C.*, 361 N.C. 630, 636, 652 S.E.2d 231, 235 (2007) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 34.01, at 34-2 (rev. 7th ed. 2006) (hereinafter *Robinson*)).

> The [LLC] Act contains numerous "default" provisions or rules that will govern an LLC only in the absence of an explicitly different arrangement in the LLC's articles of organization or written operating agreement. Because these default provisions can be changed in virtually any way the parties wish, an LLC is primarily a creature of contract.

*Robinson*, § 34.01, at 34-2 to 34-3. In the present case, the parties agree that they never entered into a written operating agreement. Therefore, the default provisions of the LLC Act govern the present case.

Plaintiffs rely upon agency principles to argue that an LLC manager has "the inherent authority to authorize lawsuits to protect the LLC's interests." Plaintiffs cite N.C. Gen. Stat. § 57C-3-23, which provides:

> Every manager is an agent of the limited liability company for the purpose of its business, and the act of every manager, including execution in the name of the limited liability company of

any instrument, for apparently carrying on in the usual way the business of the limited liability company of which he is a manager, binds the limited liability company, unless the manager so acting has in fact no authority to act for the limited liability company in the particular matter and the person with whom the manager is dealing has knowledge of the fact that the manager has no authority.

N.C. Gen. Stat. § 57C-3-23 (2007). Plaintiffs also cite *Robinson*, which notes that "[a] manager's agency power is similar to that of a corporate officer and a general partner." *Robinson*, § 34.04[2], at 34-21 n.22.

Defendant counters that the filing of the present action was a managerial decision, requiring the approval of a majority of the managers. Defendant cites N.C. Gen. Stat. § 57C-3-20(b), which provides:

Subject to any provisions in the articles of organization or a written operating agreement or this Chapter restricting, enlarging, or modifying the management rights and duties of any manager or managers, or management procedures, each manager shall have equal rights and authority to participate in the management of the limited liability company, and management decisions shall require the approval, consent, agreement, or ratification of a majority of the managers.

N.C. Gen. Stat. § 57C-3-20(b) (2007). *Robinson* also cites N.C.G.S. § 57C-3-20(b) for the following propositions: "[A]ll managers have equal rights and authority to participate in management, and management decisions require the approval of a majority of the managers." *Robinson*, § 34.04[2], at 34-21. However, *Robinson* further notes:

The Act does not require managers to take actions in accordance with a statutory procedure, such as through a meeting of the managers or by written consent, nor does it distinguish between routine decisions regarding the day-to-day affairs that a manager may make without the approval of other managers and more fundamental or otherwise significant decisions that should be made by all or a majority of managers.

*Id.* § 34.04[2], at 34-21 n.21.

Again relying on corporate law, Plaintiffs argue that

a corporate officer, as the corporation's agent, has authority to bring a lawsuit on the corporation's behalf *unless that power is*

*withdrawn by the corporation's board of directors or some other authorized authority.* . . . Logically, if a [corporate officer] has authority to authorize a corporation to file an appeal on behalf of a corporation, a 50% owner and manager of a PLLC has authority to file a lawsuit for the PLLC.

In support of this contention, Plaintiffs cite *Lowder v. All Star Mills,* 91 N.C. App. 621, 372 S.E.2d 739 (1988), *disc. review denied,* 324 N.C. 113, 377 S.E.2d 234 (1989). However, in *Lowder,* our Court merely held that the appointment of a receiver suspended Lowder's right as a corporate officer to pursue an appeal on behalf of the corporations of which he was an officer. *Id.* at 625, 372 S.E.2d at 741. Regarding the inherent authority of a corporate officer, *Robinson* explains: "The implied or inherent authority of an officer depends primarily on the powers and duties assigned to his office, which differ from company to company." *Robinson,* § 16.04[1], at 16-11. However, in *Lowder,* because the issue was not presented, our Court did not discuss the nature of the business of the corporations of which Lowder had been an officer. Therefore, we cannot determine the source of Lowder's supposed authority to file an appeal on behalf of those corporations.

Mineo & Crouse, PLLC was a law firm whose members were authorized to practice law in North Carolina, and the usual business of Mineo & Crouse, PLLC was the provision of legal services to clients. We hold that the filing of an action by one manager of an LLC against a co-manager to recover purported assets of the LLC allegedly misappropriated by that co-manager is a management decision and is not "carrying on in the usual way the business of the limited liability company[.]" *See* N.C.G.S. § 57C-3-23. Moreover, N.C.G.S. § 57C-3-23 provides: "An act of a manager that is not apparently for carrying on the usual course of the business of the limited liability company does not bind the limited liability company unless authorized in fact or ratified by the limited liability company." In the present case, Defendant filed a verified response to Plaintiffs' post-judgment motions, stating that "[a]fter a threatening letter from counsel for [P]laintiffs to [Defendant], [Defendant's counsel] met with counsel for [P]laintiffs on September 30, 2004, in an attempt to discourage counsel for [P]laintiffs from pursuing the litigation." Therefore, it is clear that Defendant, as the other member-manager of Mineo & Crouse, PLLC, did not authorize or ratify the filing of the lawsuit. For the reasons stated above, Mr. Crouse lacked authority to cause Mineo & Crouse, PLLC to institute the present action on its own behalf.

CROUSE v. MINEO

[189 N.C. App. 232 (2008)]

B.

[3] Because Mr. Crouse did not have authority to cause Mineo & Crouse, PLLC to sue in its own right, we must determine whether Mr. Crouse had standing to file a derivative action on behalf of Mineo & Crouse, PLLC. Pursuant to N.C. Gen. Stat. § 57C-8-01(a)-(b) (2007):

(a) A member may bring an action in the superior court of this State in the right of any domestic or foreign limited liability company to recover a judgment in its favor if the following conditions are met:

(1) The plaintiff does not have the authority to cause the limited liability company to sue in its own right; and

(2) The plaintiff (i) is a member of the limited liability company at the time of bringing the action, and (ii) was a member of the limited liability company at the time of the transaction of which the plaintiff complains, or the plaintiff's status as a member of the limited liability company thereafter devolved upon the plaintiff pursuant to the terms of the operating agreement from a person who was a member at such time.

(b) The complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the managers, directors, or other applicable authority and the reasons for the plaintiff's failure to obtain the action, or for not making the effort.

Because we hold that Mr. Crouse lacked the authority to cause Mineo & Crouse, PLLC to sue in its own right, Plaintiffs have satisfied the first requirement for bringing a derivative action. Plaintiffs also argue that pursuant to N.C.G.S. § 57C-8-01(a)(2)(i), Mr. Crouse was a member of Mineo & Crouse, PLLC at the time of the filing of this action. However, Defendant contends that Mr. Crouse ceased to be a member of Mineo & Crouse, PLLC when Mr. Crouse filed a petition for dissolution of Mineo & Crouse, PLLC on 29 July 2003, and that Mr. Crouse therefore was not a member of Mineo & Crouse, PLLC at the time he filed the present action. In support of this contention, Defendant cites N.C. Gen. Stat. § 57C-3-02(3)(d), which provides:

A person ceases to be a member of a limited liability company upon the happening of any of the following events of withdrawal:

. . .

(3) Unless otherwise provided in the articles of organization or a written operating agreement or with the consent of all other members, the person's:

. . .

d. Filing a petition or answer seeking *for him* any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation[.]

N.C. Gen. Stat. § 57C-3-02(3)(d) (2007) (emphasis added). Defendant appears to argue that the term "person," as used in N.C.G.S. § 57C-3-02(3)(d) means only a natural person. Therefore, Defendant argues, as soon as Mr. Crouse filed for dissolution of Mineo & Crouse, PLLC, Mr. Crouse ceased to be a member of Mineo & Crouse, PLLC. Defendant is mistaken.

Under N.C. Gen. Stat. § 57C-1-03(17) (2007), the term "person" is defined broadly as "[a]n individual, a trust, an estate, or a domestic or foreign corporation, a domestic or foreign professional corporation, a domestic or foreign partnership, a domestic or foreign limited partnership, a domestic or foreign limited liability company, an unincorporated association, or another entity." Citing this section, our Supreme Court recently recognized that member-managers of an LLC "can be natural persons or business entities." *Hamby*, 361 N.C. at 636, 652 S.E.2d at 235.

"Under our canons of statutory interpretation, where the language of a statute is clear, the courts must give the statute its plain meaning." *Armstrong v. N.C. State Bd. of Dental Examiners*, 129 N.C. App. 153, 156, 499 S.E.2d 462, 466, *disc. review denied*, 348 N.C. 692, 511 S.E.2d 643 (1998), *cert. denied*, 525 U.S. 1103, 142 L. Ed. 2d 770 (1999). In the present case, it is clear that under the LLC Act, the term "person" can be either a natural person or a business entity. It is also clear that N.C.G.S. § 57C-3-02(3)(d) refers to members who are business entities and provides that a business entity member who seeks dissolution *for itself* ceases to be a member of an LLC. The statute does not cause the disassociation of a member who files a petition for dissolution of the LLC of which he is a member.

Cases from other jurisdictions that speak to this issue support our decision. In *Sayers v. Artistic Kitchen Design, LLC*, 633 S.E.2d

619 (Ga. Ct. App. 2006), two members of an LLC (the Landaus) filed an action seeking a reorganization of the LLC so as to divest two other members (the Sayerses) of their membership rights. *Id.* at 620. The Sayerses argued that the Landaus lacked standing under a provision of the Georgia Limited Liability Company Act that provided that "a person ceases to be a member of a limited liability company when 'the member . . . files a petition or answer seeking *for the member* any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation.' " *Id.* at 620-21 (quoting Ga. Code Ann. § 14-11-601.1(b)(4)(D)). The Georgia Court of Appeals rejected the Sayerses' standing argument, stating that the subsection at issue

> establishes a default rule that a member who seeks reorganization "for the member" ceases to be a member of the company. The subsection does not say that a member who seeks reorganization *for a different member* ceases, himself, to be a member of the company. The Landaus sought the disassociation of the Sayerses, not of themselves. Thus, subsection 14-11-601.1(b)(4)(D) does not apply here.

*Id.* at 621.

In *Darwin Limes, L.L.C. v. Limes*, No. WD-06-049, 2007 WL 1378357 (Ohio Ct. App. 6 Dist. 2007) (unpublished), the appellant argued that one of the appellees ceased to be a member of the LLC upon the appellee's filing of a claim for judicial dissolution of the LLC. *Id.* at *5. The appellant relied upon § 1705.15(C)(4) of the Ohio Revised Code, which provides that a member withdraws as a member of an LLC if the member " '[f]iles a petition or answer in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief proceeding under any law or rule *that seeks for himself* any of those types of relief[.]' " *Id.* (quoting Ohio Rev. Code Ann. § 1705.15(C)(4)). The Ohio Court of Appeals, Sixth District, held that this subsection "applies to corporate or partnership members of an LLC, not natural persons." *Id.* The Court also recognized that the appellant "did not seek dissolution *for himself*. He filed an alternative complaint for dissolution for the LLC." *Id.* The Court further recognized that its interpretation of the withdrawal provision was

> consistent with R.C. 1705.15(G)-(I), which provides other events triggering dissociation:

"(G) Unless otherwise provided in writing in the operating agreement, if a member is a partnership, the dissolution and commencement of winding up of the partnership.

(H) Unless otherwise provided in writing in the operating agreement, if a member is a separate limited liability company, the dissolution and commencement of winding up of the separate limited liability company.

(I) Unless otherwise provided in writing in the operating agreement, if a member is a corporation, a certificate of dissolution or its equivalent is filed for the corporation, or its charter is revoked and is not reinstated within ninety days after the revocation."

*Id.* (quoting Ohio Rev. Code Ann. § 1705.15(G)-(I)).

Although these opinions are not binding on our Court, we find these out-of-state cases instructive. In the present case, N.C.G.S. § 57C-3-02(3)(d) provides that a person ceases to be a member of a limited liability company if the person files a petition seeking "for him any . . . dissolution." Mr. Crouse did not seek dissolution "for him[self]." Rather, by filing the petition for dissolution with the Secretary of State of North Carolina, Mr. Crouse sought the dissolution of Mineo & Crouse, PLLC. Moreover, as we discussed above, the term "person" includes both natural persons and business entities. As the term "person" is used in N.C.G.S. § 57C-3-02(3)(d), however, the term refers to a member who is a business entity because a natural person cannot seek "reorganization, arrangement, composition, readjustment, liquidation, [or] dissolution," for himself or herself. Our decision is also supported by N.C. Gen. Stat. § 57C-3-02(7)-(8) (2007), which are statutory provisions that contemplate other acts of withdrawal by members who are business entities:

(7) Unless otherwise provided in the articles of organization or a written operating agreement or with the consent of all other members, in the case of a member that is a domestic or foreign partnership, a domestic or foreign limited partnership, or another domestic or foreign limited liability company, the dissolution and commencement of winding up of the partnership, limited partnership, or limited liability company;

(8) Unless otherwise provided in the articles of organization or a written operating agreement or with the consent of all other members, in the case of a member that is a domestic or foreign

corporation, the dissolution of the corporation or the revocation of its charter[.]

We hold that Mr. Crouse was a member of Mineo & Crouse, PLLC at the time he filed this action.

We must also examine whether, under N.C.G.S. § 57C-8-01(b), Mr. Crouse alleged with particularity the efforts he made to obtain the desired action, and the reason for his failure to obtain that action. We first recognize that the record on appeal reflects that Mr. Crouse intended to cause the LLC to sue in its own right and did not intend to file a derivative action. In Plaintiffs' "motion to amend judgment pursuant to Rules 52(b) & 59(b) or in the alternative, for relief from judgment pursuant to Rule 60(b)(1) and 60(b)(6)," Plaintiffs stated that "[t]here can be little doubt that if [Mr. Crouse] had made a minority owner's derivative demand upon [Defendant], [Defendant] would have refused to return the legal fees earned by his law firm. [Defendant] rejected two demand letters sent prior to suit." Also, in Plaintiffs' "brief in support of Plaintiffs' motion[] for appointment of [Mr.] Crouse to wind up affairs of Mineo & Crouse, PLLC and motion to amend complaint to reflect this appointment . . . and motion to amend judgment," Plaintiffs stated: "It is true that Plaintiff failed to plead demand upon [Defendant], the other manager, because Plaintiffs[] believed Mr. Crouse had authority to authorize a direct action."

However, despite these statements, we hold that Plaintiffs did sufficiently plead the efforts undertaken to obtain the desired action, and the reason for Mr. Crouse's failure to obtain that action. Plaintiffs alleged in their complaint that "[Defendant] acknowledged to Mr. Crouse that they were supposed to divide profits between them and that [Defendant] had in fact agreed to do so, but that [Defendant] was under no circumstances going to share the proceeds from the firm's King wrongful death proceeds." Plaintiffs also alleged the following:

After [Defendant] continued to fail to share or account for fees he received in cases retained through Mineo & Crouse, Mr. Crouse caused a letter outlining his losses resulting from [Defendant's] wrongful conduct to be hand delivered to [Defendant] on July 8, 2004. Mr. Crouse then caused his counsel to call [Defendant] and leave two voice mail messages on his voice mail requesting a response to the July 8, 2004 letter. On September 14, 2004, yet another letter to [Defendant] requesting that he address the

issues raised in this complaint was hand delivered to [Defendant's] office.

These allegations demonstrate the particular efforts undertaken by Mr. Crouse to obtain the action Mr. Crouse demanded from Defendant. Mr. Crouse clearly alleged that he demanded that Defendant share the proceeds from the cases retained through Mineo & Crouse, PLLC, and that Defendant refused to share such proceeds. For the reasons stated above, we hold that Mr. Crouse had standing to bring a derivative action on behalf of Mineo & Crouse, PLLC, and that Plaintiffs sufficiently alleged such a claim. Therefore, we reverse the trial court and remand for proceedings consistent with this opinion.

C.

[4] Mr. Crouse also argues the trial court erred by dismissing his alternative, individual claims for *quantum meruit* and unfair or deceptive trade practices. Defendant counters that pursuant to N.C. Gen. Stat. § 57C-3-30(b), Mr. Crouse lacked standing "as an individual to bring a suit related to his rights under the PLLC against an outside party." N.C. Gen. Stat. § 57C-3-30(b) (2007) provides: "A member of a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object of the proceeding is to enforce a member's right against or liability to the limited liability company."

We begin with Mr. Crouse's individual claim for *quantum meruit*. Mr. Crouse alleged this claim in the alternative to the claims of Mineo & Crouse, PLLC. We hold that N.C.G.S. § 57C-3-30(b) is inapplicable to Mr. Crouse's individual claim for *quantum meruit*. While Mr. Crouse would not be a proper party to a proceeding by Mineo & Crouse, PLLC, the *quantum meruit* claim was brought to recover for injuries caused to Mr. Crouse individually.

"To recover in *quantum meruit*, [a] plaintiff must show: (1) services were rendered to [the] defendant[]; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Environmental Landscape Design v. Shields*, 75 N.C. App. 304, 306, 330 S.E.2d 627, 628 (1985). An attorney who performed significant services for a client under a contingency fee relationship may recover in *quantum meruit* from the settling attorney. *Pryor v. Merten*, 127 N.C. App. 483, 487, 490 S.E.2d 590, 592-93 (1997), *disc. review denied*, 347 N.C. 578, 502 S.E.2d 597 (1998).

In the present case, Mr. Crouse alleged the following:

16. Mr. Crouse lent money to [Defendant] to assist him with certain personal obligations during the prosecution of the Harrisburg Jet case and the King wrongful death case.

17. Mr. Crouse lent money to Mineo & Crouse to finance certain litigation of Mineo & Crouse originated by [Defendant] including the Harrisburg Jet case and the King wrongful death case.

18. On information and belief, [Defendant] has collected in excess of $2,480,000.00 for cases conducted through Mineo & Crouse including the Harrisburg Jet case and the King wrongful death case. [Defendant] has wrongfully refused to . . . share any of the profits of these cases with his partner/co-member, Mr. Crouse. . . .

19. Mr. Crouse provided assistance to [Defendant] in both the Harrisburg Jet case and the King wrongful death case, but in no way was compensated for his time, effort, risk capital or membership in the firm during the prosecution of these two cases.

Taking these allegations as true, they demonstrate that Mr. Crouse provided services to Defendant and that Defendant accepted these services. Moreover, Mr. Crouse alleges that Defendant wrongfully refused to share the profits from the Harrisburg Jet and King cases, which demonstrates that Mr. Crouse did not perform his services gratuitously. Accordingly, we hold that Mr. Crouse stated a claim for *quantum meruit. See Environmental Landscape Design*, 75 N.C. App. at 306, 330 S.E.2d at 628.

[5] We must also determine whether Mr. Crouse stated a claim for an unfair or deceptive trade practice (UDTP claim). "In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to [the] plaintiff[]." *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681, *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000).

Defendant argues that

an individual lacks standing to sue for perceived rights of a PLLC. Even if the UFD [statute] could somehow be invoked, the claim regarding UFD would exist between Mineo and the PLLC and could . . . only be invoked by the company, not by an indi-

vidual who admits in pleadings his only claim is his rights under the company.

With regard to Mr. Crouse's UDTP claim, we agree with Defendant. Mr. Crouse alleged that "Defendant's breach of fiduciary duty and anticipatory breaches of fiduciary duty constitute unfair or deceptive acts or practices[.]" Moreover, Mr. Crouse alleged that he and Defendant had a "special relationship of trust and confidence that constituted a fiduciary relationship[]" by virtue of "their partnership, co-membership in Mineo & Crouse, PLLC and otherwise[.]" All of the allegations alleging breach of fiduciary duty, and consequently a UDTP claim, relate to the parties' relationship through Mineo & Crouse, PLLC. Therefore, we hold that Mr. Crouse did not state an individual claim for UDTP against Defendant.

## II.

[6] Plaintiffs argue the trial court abused its discretion by denying their motion to amend the order dismissing their complaint. Plaintiffs appear to argue the trial court should have dismissed their complaint without prejudice to allow them to re-file the complaint as a derivative action. However, given that we hold that Plaintiffs did not lack standing to file a derivative action and we remand as to this claim, this issue is moot. *See Roberts v. Madison County Realtors Assn.*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996) (holding that "[a] case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.").

## III.

[7] Plaintiffs also argue the trial court erred by denying their motion to appoint Mr. Crouse to wind up the affairs of Mineo & Crouse, PLLC. Plaintiffs cite no case law or authority in support of their argument as directed by N.C.R. App. P. 28(b)(6) and we decline to consider this issue. We do note that Plaintiffs cite N.C. Gen. Stat. § 57C-6-04(a), which provides: "Except as otherwise provided in this Chapter, the articles of organization, or a written operating agreement, the managers shall wind up the limited liability company's affairs following its dissolution." N.C. Gen. Stat. § 57C-6-04(a) (2007). However, in the present case, Mr. Crouse petitioned the trial court for the appointment of a person to wind up the affairs of Mineo & Crouse, PLLC. N.C.G.S. § 57C-6-04(a) further provides as follows: "The court *may* wind up the limited liability company's affairs, or appoint a person to wind up its affairs, on application of any member, his legal rep-

resentative, or assignee." *Id.* (emphasis added). The use of the term "may" connotes discretion on the part of the trial court to wind up the affairs itself, appoint a person to do so, or do neither. *See Wade v. Carolina Brush Mfg. Co.*, 187 N.C. App. 198, 250, 652 S.E.2d 713, 717 (2007) (recognizing that "[t]he use of the word 'may' has been interpreted by our Supreme Court to connote discretionary power, rather than an obligatory one"); *Campbell v. Church*, 298 N.C. 476, 483, 259 S.E.2d 558, 563 (1979) (stating that "the use of 'may' generally connotes permissive or discretionary action and does not mandate or compel a particular act."). Under the unique circumstances existing at the time the trial court denied the motion and with Plaintiffs' complaint having been dismissed in its entirety, we cannot say that the trial court abused its discretion by denying Plaintiffs' motion to appoint Mr. Crouse to wind up the affairs of Mineo & Crouse, PLLC.

Affirmed in part; reversed and remanded in part.

Judges BRYANT and STEPHENS concur.