Priest v. Coch, 2013 NCBC 6.

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 3532

PETER H. PRIEST and )
LAW OFFICES OF PETER H. )
PRIEST, PLLC, )
　 )
　　　　Plaintiffs, )
　 )
　　v. )
　 )
　 )
GABRIEL COCH and )
INFORMATION PATTERNS, LLC, )
　 )
　　　　Defendants. )
　 )

ORDER ON DEFENDANTS'
MOTION TO DISMISS

{1}     THIS MATTER is before the court on Defendants' Motion to Dismiss Plaintiffs' Claims ("Motion") pursuant to Rules 12(b)(6) and 12(b)(1) of the North Carolina Rules of Civil Procedure ("Rule(s)").  For the reasons stated below, the Motion is GRANTED, in part, and DENIED, in part.

> *J.W. Bryant Law Firm, PLLC, by John Walter Bryant, for Peter H. Priest and Law Offices of Peter H. Priest, PLLC.*

> *Glenn, Mills, Fisher & Mahoney, P.A., by Carlos E. Mahoney and Amber J. Ivie, for Gabriel Coch and Information Patterns, LLC.*

Gale, Judge.

## I.   PROCEDURAL HISTORY

{2}     Plaintiffs Peter H. Priest ("Priest") and the Law Offices of Peter H. Priest, PLLC ("Law Office") initiated this action on June 19, 2012 by filing a Complaint alleging claims for breach of contract, breach of fiduciary duty,

constructive fraud, fraud, and unfair and deceptive trade practices against Defendants Gabriel Coch ("Coch") and Information Patterns, LLC ("Information Patterns").

{3} On July 10, 2012, presiding Superior Court Judge Orlando F. Hudson, Jr. issued a Consent Order directing counsel for Defendants to retain in the firm's trust account the amount of $200,000.00 in proceeds from the sale of the patent at issue ("Patent") until this matter is resolved.

{4} On July 24, 2012, Defendants' request that the case be designated as a complex business case was granted by Chief Justice Sarah Parker, and the case was assigned to the undersigned on July 25, 2012.

{5} Plaintiffs allege that during the course of their representation of Defendants, they were tasked to draft and prosecute a patent application on Defendants' behalf, and after an initial billing was paid, the Parties entered into an agreement whereby Plaintiffs would receive one-fourth of the proceeds from the sale or license of any patent issued as compensation for Plaintiffs' unpaid legal services as well as for any additional services needed to complete the patent application ("Agreement"). Plaintiffs assert that this Agreement imposed a fiduciary duty on Defendants because of their exclusive control over selling or licensing the Patent. Plaintiffs allege that Defendants have breached both the Agreement and their fiduciary duty by refusing to pay Plaintiffs their agreed-upon portion of the net proceeds from the sale. Plaintiffs further allege fraud on the basis that Defendants induced Plaintiffs to enter into the Agreement and to continue to provide legal services, knowing at the time of execution that they did not intend to comply with their promise. Finally, Plaintiffs assert that Defendants' conduct as alleged constitutes an unfair and deceptive trade practice.

{6} Defendants filed their Motion to Dismiss on August 24, 2012. They assert that Priest individually lacks standing to bring any claim because he is not a party to the Agreement and is not a proper party under N.C. Gen. Stat. § 57C-3-

30(b).[1]  As to the Law Office, Defendants contend that the allegations in the Complaint are insufficient to state any claims on which relief may be granted.

{7}    The Motion has been fully briefed and the Parties waived oral argument.

## II.  STATEMENT OF FACTS

{8}    Solely for the purposes of this Motion, the court accepts the allegations of the Complaint as true and draws reasonable inferences from those facts in Plaintiffs' favor. *See, e.g.*, *Sutton v. Duke*, 277 N.C. 94, 102–03, 176 S.E.2d, 161, 166 (1970); *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008); *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670–71, 355 S.E.2d 838, 840–41 (1987).

{9}    Priest is an attorney and resident of Durham, North Carolina.  (Compl. ¶¶ 1–2, 8.)  He owns and operates the Law Office, a North Carolina professional limited liability company with its principal place of business in Durham, North Carolina. (Compl. ¶¶ 1–2.)

{10}   Information Patterns is a limited liability company organized and existing under the laws of the State of North Carolina with its principal place of business in Chapel Hill, North Carolina.  (Compl. ¶ 3.)  Coch is a resident of Chapel Hill, North Carolina, and is a member and manager of Information Patterns.  (Compl. ¶ 4.)

{11}   Other members of Information Patterns include Graham Knight ("Knight") and David Smith ("Smith"), both of whom are citizens and residents of the United Kingdom.  (Compl. ¶¶ 4–6.)  Coch, Knight, and Smith created a computer program that eventually became the subject of the Patent.  (Compl. ¶ 11.)

{12}   Around 2004, Plaintiffs entered an initial engagement agreement providing compensation at hourly rates based on time spent and capping fees at

---

[1]  Priest has not pointed to any provision of an operating agreement that could provide him individual standing.

$10,000.00.  (Compl. ¶¶ 9, 12–13.)  The Law Office billed Defendants for the cap amount, which Defendants paid without objection.  (Compl. ¶ 14.)

{13}    In December 2005, Coch, Knight, and Smith each assigned their interests in the Patent to Information Patterns.  (Compl. ¶ 15.)

{14}    In September 2009, Plaintiffs received a notice of "Non-Final Rejection" from the U.S. Patent and Trademark Office ("USPTO"), which required additional legal work by Plaintiffs in order for Defendants to secure the Patent.  (Compl. ¶¶ 16–18.)  Plaintiffs knew that failure to respond to the notice would constitute abandonment of the patent application, thereby nullifying it.  (Compl. ¶ 19.)  Plaintiffs therefore began the work to complete this second phase of the application process in order to preserve Defendants' application.  (Compl. ¶ 21.)

{15}    At the outset of the Parties' relationship, Plaintiffs informed Coch of an estimated cost of $3,000.00 for the second phase of the patent application process, if needed. (Compl. ¶ 20.)

{16}    In January 2010, Coch informed Priest that neither Coch, Knight, Smith, nor Information Patterns had the funds to pay for Plaintiffs' legal services or any necessary expenses to continue the second phase of the application process.  (Compl. ¶ 23.)  By this point, Plaintiffs already had completed much of the work required to continue the patent application.  (Compl. ¶ 24.)  Priest filed the required response to the notice with Coch's consent and input in order to preserve the patent application.  (Compl. ¶ 25.)

{17}    On February 18, 2010, Priest received a "Notice of Allowance" from the USPTO indicating that a patent would be issued to Information Patterns. (Compl. ¶ 26.)

{18}    Priest and Coch then discussed an arrangement by which Plaintiffs could be compensated for unpaid past legal services rendered and for continuing legal services needed to complete the patent application.  (Compl. ¶¶ 27–28, 107–09.)  The Parties reached the verbal Agreement, which was later memorialized in writing.  (Compl. ¶¶ 29–30, 34–38, 42–46.)  The Agreement provides that Priest, Coch, Knight, and Smith would share the payment of expenses and share proceeds

on a pro rata basis.  (Compl. ¶¶ 41, 48.)  Plaintiffs assert that the terms of the Agreement also stipulate that in exchange for the Law Office's past and future work, Plaintiffs would receive an interest in the proceeds from the sale or license of the Patent.  (Compl. ¶¶ 28, 42, 83, 91–93, 109.)  Defendants instead assert that the terms of the Agreement only provide the Law Office with a 25% interest in proceeds resulting from licensing the Patent, and the Agreement does not grant the Law Office an interest in proceeds resulting from sale of the Patent. (Defs.' Br. in Supp. of their Mot. to Dismiss 2.)  All Parties agree that the relationship proceeded according to these terms until the proceeds from the Patent sale became available for distribution.  (Compl. ¶¶ 50-51, 54–55; Defs.' Br. in Supp. of their Mot. to Dismiss 9.)

{19}    Plaintiffs allege that Coch signed the written Agreement (Compl. ¶¶ 43–45) on behalf of Information Patterns and Priest signed on behalf of the Law Office.  However, Plaintiffs do not presently have a copy of the Agreement with Defendants' signatures.  (Compl. ¶¶ 49, 55; Defs.' Br. in Supp. of their Mot. to Dismiss 9, n.4.)  Plaintiffs allege that Coch signed and promised to obtain Knight's and Smith's signatures (Compl. ¶ 46), but assured Plaintiffs that the Agreement was binding on Information Patterns and effective immediately upon Coch's signature, and that the signatures of the co-inventors were mere formalities. (Compl. ¶ 49.)  Plaintiffs allege that Defendants continued to accept their services, including payment of expenses for the Patent, without further payment of attorney's fees.  (Compl. ¶¶ 50, 55.)

{20}    On June 15, 2010, the USPTO issued the Patent.  (Compl. ¶ 56.)

{21}    On October 7, 2011, Coch informed Priest that he had contacted a California patent broker named Patent Profit International, LLC ("PPI") to explore a sale of the Patent.  (Compl. ¶¶ 57–58.)

{22}    Before agreeing to engage PPI to sell the Patent, Priest insisted on performing a due diligence review of the company.  To that end, Priest met with PPI's principal, William J. Plut ("Plut").  (Compl. ¶ 60–62.)

{23}    Priest and Coch, on behalf of Information Patterns, executed an agreement dated October 4, 2011 ("Patent Sales Agreement") with PPI to market and sell the Patent. (Compl. ¶ 66.) Priest believes that Coch had negotiated the terms with PPI before he contacted Priest on October 7, 2011. (Compl. ¶¶ 59, 66.) Priest signed the Patent Sales Agreement on October 14, 2011. (Compl. ¶ 66.) Coch and Plut signed the Patent Sales Agreement on October 17, 2011. (Compl. ¶¶ 67-68.)

{24}    During October 2011, Coch asked Priest, Knight, and Smith for a 10% finder's fee of the net proceeds if the Patent was sold. (Compl. ¶ 71.) Coch asserted that his co-inventors agreed to this new term; Priest, however, did not agree to it. (Compl. ¶¶ 73–74.) On March 19, 2012, the sale of the Patent closed for $1,000,000.00. (Compl. ¶¶ 69, 76.) As provided by the Patent Sales Agreement, PPI received a brokerage fee of 20% of the sales price, leaving a net profit of $800,000. (Compl. ¶ 75.)

{25}    Plaintiffs assert that the Agreement between the Parties entitles them to 25% of the net proceeds from the sale, or $200,000.00 (*Id.*) and that Defendants have failed and refused to make this payment. (Compl. ¶ 76.)

## III.  STANDARD OF REVIEW

{26}    A motion to dismiss pursuant to Rule 12(b)(6) inquires "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse* 189 N.C. App. at 237, 658 S.E.2d at 36; *Harris* at 85 N.C. App. at 670–71, 355 S.E.2d at 840–41; *see Sutton* 277 N.C. at 102–03, 176 S.E.2d at 166. The court in ruling on the motion should consider exhibits attached to the complaint because they are a part of the pleading for all purposes. *Woolard v. Davenport*, 166 N.C. App. 129, 133–34, 601 S.E.2d 319, 322 (2004); N.C. GEN. STAT. § 1A-1, Rule 10(c) (2012).

## IV. ANALYSIS

### A.  Priest Individually Is Not a Proper Party to the Action.

{27}  "A party has standing to initiate a lawsuit if he is a real party in interest.  A real party in interest is one who benefits from or is harmed by the outcome of the case and by substantive law has the legal right to enforce the claim in question."  *Beachcomber Props., LLC v. Station One, Inc.*, 169 N.C. App. 820, 823–24, 611 S.E.2d 191, 193–94 (2005) (citations omitted).

{28}  The basis of Plaintiffs' action is the alleged Agreement.  To have a legal right to enforce claims based on the Agreement, Priest would need to be a party to the Agreement individually.  *See Coderre v. Futrell*, ___ S.E.2d ____, No. COA12–517, 2012 WL 6587657, at *3 (N.C. App. Dec. 18, 2012) (reasoning that Plaintiff, an individual, did not have standing where "the purchase agreement . . . form[ing] the basis of the initial complaint was not executed by [Plaintiff] in his individual capacity."); *see also Holshouser v. Shaner Hotel Grp. Props. One L.P.*, 134 N.C. App. 391, 399, 518 S.E.2d 17, 24–25 (1999) ("To assert a claim for breach of contract, the plaintiff must show that she is either a party to the contract or a third-party beneficiary of the contract").  The Complaint alleges that Priest signed the Agreement on behalf of the Law Office, not in his individual capacity, whereas Coch signed the Agreement both in his individual capacity, as well as on behalf of Information Patterns.  This allegation is inadequate to confer standing on Priest individually.

### B.  Plaintiffs Fail to Allege Facts Sufficient to Support Their Claims for Breach of Fiduciary Duty, Constructive Fraud, and Unfair and Deceptive Trade Practices.

{29}  Fairly read, the Complaint seeks to enforce a contingent fee agreement.  Generally, such an agreement does not give rise to a fiduciary duty owed by the clients.  "A claim for breach of a fiduciary duty requires the existence of a fiduciary relationship."  *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 293,

603 S.E.2d 147, 155 (2004). As attorneys, Plaintiffs were fiduciaries to Defendants in regard to legal services. *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 907 (1931). A fiduciary relationship may include "all legal relations, such as attorney and client . . . but it [also] extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other." *Id.* However, "[o]nly when one party figuratively holds all the cards . . . have North Carolina courts found that the special circumstance of a fiduciary duty has arisen." *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 730 S.E.2d 763, 767 (N.C. App. 2012) (internal quotation marks omitted).

{30} There is no such dominion or control exercised by Defendants evidenced by the Complaint. Further, Plaintiffs do not allege that they and Defendants had entered a partnership or joint venture[2] which might give rise to fiduciary duties.[3] Plaintiffs rather allege: [1] that the Agreement between the

---

[2] Generally, there are two essential elements required to prove the existence of a joint venture: "(1) an agreement to engage in a single business venture with the joint sharing of profits, (2) with each party to the joint venture having a right in some measure to direct the conduct of the other through a necessary fiduciary relationship." *Best Cartage, Inc. v. Stonewall Packaging, LLC*, ___ N.C. App. ___, 727 S.E.2d 291, 298 (N.C. App. 2012) (internal quotation marks omitted). To constitute a joint venture "the parties must combine their property, money, efforts, skill or knowledge in some common undertaking." *Id.* (internal quotation marks omitted). Again, if the lawyer enters a joint venture with a client, there are additional steps which must be undertaken.

[3] In appropriate circumstances a lawyer may enter a business arrangement with a client, but only if certain procedures are followed. *See* North Carolina Rule of Professional Conduct 1.8(a), which states:

> "(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest directly adverse to a client unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
>
> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and;
>
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

*Available at*, http://www.ncbar.com/rules/rules.asp?page=11.

Parties was for the purpose of compensating Plaintiffs for past unpaid legal work and for additional work required in the second phase of the patent application (Compl. ¶¶ 27–28, 42, 82–83, 91, 109); [2] that in exchange for this past and future legal work, Plaintiffs would receive an interest in the proceeds of the license or sale of the Patent (Compl. ¶¶ 28, 42, 83, 93, 109); [3] that in addition to receiving a 25% interest in the potential proceeds, Plaintiffs agreed they also would share 25% of the patent expenses (Compl. ¶¶ 41, 48, 84–85, 93); [4] that the Parties later reduced these terms to writing (Compl. ¶¶ 29–30, 42–46, 81); [5] that at the time of the Agreement neither party knew whether the Patent actually had any marketable value that could generate any kind of proceeds (Compl. ¶ 33); and [6] that after agreeing upon the terms, Plaintiffs continued to provide legal services at no cost to Defendants for the purpose of securing the Patent. (Compl. ¶¶ 50, 55, 86, 109.) The clearly stated purpose of the Agreement was to compensate Plaintiffs in the event Defendants derived any proceeds from the Patent. The arrangement alleged is then a contingent fee agreement that is subject to the rules for such agreements.

{31} In sum, Plaintiffs have failed to state a claim for breach of fiduciary duty. It follows that Plaintiffs' constructive fraud claim also fails for it depends upon the violation of such a fiduciary duty. *See Compton v. Kirby*, 157 N.C. App. 1, 16, 577 S.E.2d 905, 914 (2003) (stating that "a breach of fiduciary duty amounts to constructive fraud.")

{32} Likewise, because the Complaint is based on the Agreement for the payment of attorney's fees, the unfair and deceptive trade practices claim is barred under North Carolina General Statute § 75-1.1 which provides that "professional services rendered by a member of a learned profession" are not "commerce" within the meaning of the statute.[4]

---

[4] While lawyers are not necessarily precluded from pursuing an unfair and deceptive trade practice claim simply by virtue of being their lawyers, "professional services rendered by an attorney in the course of his business . . . may not form the basis of an unfair or deceptive trade practices claim." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 36, 568 S.E.2d 893, 902 (2002), *appeal dismissed and review denied,* 357 N.C. 163, 580 S.E.2d 361 (2003).

C.    <u>Plaintiff Law Office Has Sufficiently Alleged Facts to Support Claims for Breach of Contract and Fraud.</u>

{33}    In order to establish a claim for breach of contract, Plaintiffs must show: "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).

{34}    The Complaint alleges that: [1] the Parties entered into a verbal agreement later reduced to writing (Compl. ¶¶ 27–28, 42, 82–83, 91, 93, 109); [2] under the terms of the Agreement, Plaintiffs agreed to defer compensation for past, unpaid legal services and to continue to provide legal services in exchange for a one-quarter potential interest in the proceeds of a sale or license of the Patent (Compl. ¶¶ 28, 42, 83, 93, 109); [3] the Parties agreed to split the expenses of the patent application on a pro rata basis (Compl. ¶¶ 41, 48, 84–85, 93); [4] subsequent to this agreement, Defendants accepted Plaintiffs' services at no cost and the Parties otherwise conducted themselves according to these terms up to and until Defendants realized proceeds from selling the Patent (Compl. ¶¶ 50–55, 86, 109); and [5] Defendants have failed and refused to pay Plaintiffs their agreed-upon portion of the net proceeds from the Patent sale. (Compl. ¶¶ 76, 86, 114.) These facts are sufficient, for purposes of 12(b)(6), to state a claim for breach of contract.

{35}    Admittedly, the Agreement's language is less than precise. Plaintiffs assert that the Agreement allowed them to share in proceeds realized from either licensing *or* selling the Patent. (Compl. ¶¶ 28, 32, 35, 41–42, 48–49, 83, 86, 93, 109, 114.) Defendants contend that Plaintiffs' interest only includes proceeds generated from licensing the Patent. (Defs.' Br. in Supp. of their Mot. to Dismiss at 2, 6–8, 16–17.) There is contract language upon which to base these respective arguments. The present Motion is not the proper vehicle to resolve disagreements regarding how the terms of the Agreement are to be construed.

{36}    Likewise, the court cannot determine on the Rule 12(b)(6) Motion whether the Agreement is unenforceable  because it violates North Carolina Rule of Professional Conduct 1.5(c). This Rule requires that "[a] contingent fee agreement shall be in a writing signed by the client and shall state the method by which the

fee is to be determined, including the percentage or percentages that shall accrue to the lawyer . . ." Rule 1.5(c) N.C.R.P.C.  Plaintiffs have alleged there was such a writing.  Their allegations must be accepted as true for purposes of this Motion.[5]

{37}  Likewise, the fraud allegations survive the Rule 12(b)(6) Motion and the fraud claim does not fail for want of particularity.  "While the facts constituting the fraud must be alleged with particularity, there is no requirement that any precise formula be followed or that any certain language be used." *Carver v. Roberts*, 78 N.C. App. 511, 513, 337 S.E.2d 126, 128 (1985); N.C. GEN. STAT. § 1A-1, Rule 9(b) (2012).  The particularity requirement can be met if the complaint specifies the time, place and content of the misrepresentation, the identity of the person making the misrepresentation, and what was obtained as a result of the misrepresentation.  *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E. 2d 674, 678 (1981).

{38}  The Complaint alleges that: [1] Defendants falsely represented to Plaintiffs that they would receive an interest in any proceeds realized from the sale or license of the Patent in exchange for waiving compensation for their legal services (Compl. ¶¶ 77, 110–11); [2] Defendants knew that neither they nor the Patent co-inventors were capable of paying Plaintiffs for their work (Compl. ¶¶ 21–28, 107–09); [3] Defendants knew when they made the representation regarding Plaintiffs' potential interest in the Patent proceeds that they did not intend to pay (Compl. ¶¶ 78–79, 110–13); [4] Plaintiffs relied on the representation and continued to provide free legal services (Compl. ¶¶ 91–95, 109, 114); [5] the Patent eventually was sold for a net profit of $800,000.00 (Compl. ¶¶ 69, 75); [6] Plaintiffs were entitled to payment of 25% of the net proceeds (Compl. ¶¶ 48–49); and [7] Defendants have failed to and refuse to pay Plaintiffs their agreed-upon portion of the proceeds.  (Compl. ¶¶ 76, 86, 114.)  These facts are alleged with sufficient

---

[5] Even if the Agreement ultimately fails for want of a written client signature, the court would then be required to address whether Plaintiffs have stated a claim under a quasi-contract theory "for the reasonable value of services and materials rendered to and accepted by a defendant." *See Robinson, Bradshaw & Hinson, P.A. v. Smith*, 129 NC App 305, 315, 498 S.E.2d 841, 849 (1998); *Creech v. Melnik*, 347 N.C. 520, 526–27, 495 S.E.2d 907, 911–12 (1998); *see generally, Harmon v. Pugh*, 38 N.C. App. 438, 248 S.E.2d 421 (1978).

particularity to support a claim for fraud to withstand dismissal under 12(b)(6). *See Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974). The claim may ultimately be difficult to prove because it will require proof that Defendants had no intention to pay when first entering the Agreement, but the Complaint includes a factual allegation to this effect.

{39} Defendants cite *Hudson-Cole Development Corp. v. Beemer* for the proposition that "when the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999). But, "our Supreme Court has stated that '[t]he law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract.'" *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 438, 617 S.E.2d 664, 671 (2005) (quoting *Johnson v. Owens,* 263 N.C. 754, 758, 140 S.E.2d 311, 314 (1965)). Defendants' argument raises matters which cannot be resolved by a Rule 12(b)(6) Motion, particularly where the Complaint contains facts adequate to support Plaintiffs' argument that

> [t]he first opportunity for Plaintiffs to learn that Defendants were being fraudulent came when Defendants received the proceeds of the sale of the Patent and failed to pay Plaintiffs as promised and agreed by all. No due diligence on the part of Plaintiffs before that time did or could have revealed the [alleged misrepresentation].

(Pls.' Opp'n Br. 20.)


## V. CONCLUSION

{40} For the reasons stated, Defendants' Motion is GRANTED, in part, and DENIED, in part. The following claims are DISMISSED: (a) all claims by Priest individually and (b) claims by the Law Office for breach of fiduciary duty,

constructive fraud, and unfair and deceptive trade practices. The Motion is DENIED as to the Law Office's claims for breach of contract and fraud.

IT IS SO ORDERED, this 25th day of January 2013.