**FOX HOLDINGS, INC. v. WHEATLY OIL CO.**

[161 N.C. App. 47 (2003)]

━━━━━━━━

FOX HOLDINGS, INC., Plaintiff v. WHEATLY OIL CO., INC., Defendant

No. COA01-183

(Filed 4 November 2003)

**Venue— purchase of store assets—assignment of lease—action affecting interest in real property**

Plaintiff purchaser's action seeking specific performance and damages arising from defendant seller's breach of an agreement for the purchase of the assets of a convenience store that included an assignment of a sublease of the real property on which the convenience store was located affected an interest in real property and was required by N.C.G.S. § 1-76(1) to be brought in the county in which the real property was located;

therefore, the trial court erred by denying defendant's motion to remove the action to such county.

Chief Judge EAGLES dissenting.

Appeal by defendant from order entered 13 December 2000 by Judge Benjamin G. Alford in Craven County Superior Court. Heard in the Court of Appeals 7 January 2002.

*Ward and Smith, P.A., by Kenneth R. Wooten, for plaintiff appellee.*

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C. R. Wheatly, III, for defendant appellant.*

McCULLOUGH, Judge.

Plaintiff Fox Holdings, Inc., filed its complaint 2 August 2000 in Craven County where it allegedly maintains its principal place of business. In its complaint, plaintiff alleges that it had entered into an Asset Purchase Agreement with defendant Wheatly Oil Co., Inc., on 12 May 1999. This agreement dealt with the purchase by plaintiff of defendant's five convenience stores and the land on which they are located. Also included in the purchase agreement was the machinery, furniture, fixtures and equipment, personal property leases, intangibles, agreements, motor vehicles and inventory related or used in operating the stores.

On 9 September 1999, plaintiff alleges that a second amendment to the contract was made that dealt specifically with an additional convenience store. This additional convenience store was known as "Store #3," and was located in Carteret County. Plaintiff was to acquire this store from defendant as per the following provisions:

2. The Agreement is hereby amended to add thereto the following provisions related to Store #3:

(a) <u>Purchase and Sale of Assets</u>. Upon the terms and subject to the conditions set forth herein, Seller shall sell, convey, transfer and deliver to Purchaser, and Purchaser shall purchase and accept on the Supplemental Closing Date (as defined below), all of Seller's right[,] title and interest in the following assets related to Store #3 (collectively, the 'Store #3 Assets'): (i) the Sublease; (ii) all Personal Property Leases; (iii) all machinery, furniture, fixtures,

improvements and equipment, including any maintenance or service contracts thereon; (iv) any agreements, contracts, deposits or commitments; (v) all store inventory, opened or unopened, and all fuel inventory; and (vi) all of assets of Seller used or useful in the operation of Store #3.

(b) Purchase Price. In consideration of and in exchange for the assignment and transfer by the Seller of the Store #3 Assets, the Purchaser agrees to pay to Seller the supplemental purchase price (the 'Supplemental Purchase Price') which shall be Two Hundred and Fifty Thousand and 00/100 Dollars ($250,000), plus an amount equal to the Seller's cost for all fuel inventory on the Supplemental Closing Date and retail price for all store inventory on such date, reduced by the Seller's historical gross profit margin of 33-percent (33%).

. . . .

(f) Exclusive Rights. Upon the consummation of the transaction contemplated herein, Purchaser shall have the sole and full benefit of operating Store #3 exclusive of any rights Seller might have, including Purchaser's right to receive all income and profits from Store #3 and liability for all costs and expenses in connection with the operation thereof.

. . . .

(h) Option to Operate Location. Prior to the Supplemental Closing, Purchaser shall have the right to elect to purchase Seller's inventory at Store #3 (in accordance with paragraph (b) above) and operate Store #3 until such time as the Sublease expires, is terminated, or the Supplemental Closing takes place. In such event, Purchaser shall (i) pay to Seller an amount equal to Seller's monthly cost of leasing and operating Store #3, which amount shall be due and payable on the date Purchaser elects to operate Store #3 and each month thereafter, and (ii) be entitled to receive all income from the operation of Store #3 and be responsible for all liabilities in connection therewith, subject to the applicable provisions of the Agreement. In the event Purchaser elects to operate Store #3 under this paragraph (h) Purchaser

shall continue to have the right to acquire the Store #3 Assets in accordance with the terms of this Second Amendment. In the event that Purchaser does not elect to operate Store #3 under this paragraph (h) on or before December 31, 2000, this Second Amendment shall automatically terminate and the parties shall have no further rights or obligations hereunder.

The closing date of the original agreement was extended by this amendment to 17 September 1999, with time being of the essence.

As the amendment notes, Store #3 was located on property that was subject to a sublease. Defendant operated Store #3 pursuant to a sublease agreement with Southern Outdoor Advertising, Inc. This sublease agreement began on 15 November 1984 and was to end 14 November 2014. The owner of the land on which the store is located is Atlantic & North Carolina Railroad. Neither Southern nor Atlantic are parties to this suit. Defendant was to assign this sublease to plaintiff pursuant to this agreement. In the alternative, plaintiff could elect to operate the store pursuant to paragraph 2(h) above. Plaintiff could have purchased the inventory and operated the store, without an assignment of the sublease, for the remaining period of the sublease. According to plaintiff, when the sublease was up, defendant would then convey the sublease.

Closing apparently occurred on 23 September 1999. According to plaintiff's allegations, defendant "has failed and refused to make Store Number 3 available for acquisition and/or operation." Plaintiff alleges that, while it has performed all of its obligations as to the agreement, defendant is in breach of the agreement.

Plaintiff makes five claims for relief in its complaint. First, plaintiff alleges that defendant has not made Store #3 available as per the agreement, thereby breaching the contract. Plaintiff alleges that it is "entitled to the issuance of a Preliminary Injunction commanding [defendant] to make Store Number Three available to [plaintiff] for operation as required by the parties' contract, including but not limited to the execution of an assignment or other conveyance of [defendant's] lease thereof . . . . In the alternative, Plaintiff is entitled to recover damages in excess of the sum of Ten Thousand and No/100 Dollars ($10,000.00)." Plaintiff's second and third claims deal with the monetary damage suffered by plaintiff as a result of the failure of defendant to convey its interests in compliance with the Asset Purchase Agreement (essentially the money defendant is making

while still in possession of the store). The fourth claim is for unfair and deceptive trade practices, and the fifth claim is for a breach of warranty due to environmental problems with the store sites.

Plaintiff's complaint prayed for the following relief:

1.. That the Court enter a preliminary injunction commanding [defendant] to make Store Number 3 available to [plaintiff] for operation as required by the parties' contract, *including but not limited to the execution of an assignment or other conveyance of [defendant's] lease thereof*, in a form to be provided by [plaintiff] and consistent with the parties' agreement, to issue a permanent injunction consistent with the above, and prohibiting such further actions by [defendant] as would interfere with [plaintiff's] contract or, in the alternative, [plaintiff] is entitled to recover damages in excess of the sum of Ten Thousand and No/100 Dollars ($10,000.00).

2. That the Court enter a decree granting [plaintiff] *specific performance of its contract with [defendant], including but not limited to an order commanding [defendant] to assign or otherwise convey its lease to the realty described above.*

(Emphasis added.) Plaintiff also prayed for various money damages stemming from the non-conveyance of Store #3.

Defendant filed its motion to remove this action from Craven County to Carteret County, the county in which Store #3 is located, on 5 September 2000. The trial court denied this motion on 13 December 2000. It is from this order that defendant appeals.

Defendant's sole assignment of error is that the trial court erred by denying its motion for change of venue pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(3), in that proper venue would lie in Carteret County pursuant to N.C. Gen. Stat. § 1-76.

I.

Denial of a motion for change of venue as a matter of right under N.C. Gen. Stat. § 1-76, although interlocutory, is directly appealable. *See Pierce v. Associated Rest and Nursing Care, Inc.*, 90 N.C. App. 210, 368 S.E.2d 41 (1988).

N.C. Gen. Stat. § 1-76 (1999) provides:

Actions for the following causes must be tried in the county in which the subject of the action, or some part thereof, is situ-

ated, subject to the power of the court to change the place of trial in the cases provided by law:

> (1) Recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest, and for injuries to real property.

*Id.* The Court in *Pierce* found:

> Pursuant to this statute, an action must be tried in the county where the property is located when the judgment to which a plaintiff would be entitled upon the allegations of the complaint will affect the title to land. *Thompson v. Horrell*, 272 N.C. 503, 158 S.E.2d 633 (1968). In determining whether the judgment sought by plaintiff would affect title to land, the court is limited to considering only the allegations of the complaint. *McCrary Stone Service v. Lyalls*, 77 N.C. App. 796, 336 S.E.2d 103 (1985), *disc. rev. denied*, 315 N.C. 588, 341 S.E.2d 26 (1986).

*Pierce*, 90 N.C. App. at 212, 368 S.E.2d at 42.

Defendant contends that because plaintiff seeks the specific enforcement of the Asset Purchase Agreement, which would require defendant to convey its sublease in Store #3 and all personal property accompanying the store, this action affects an interest in real property and must be tried in Carteret County. Plaintiff contends that this is an *in personam* claim and the interest in real property is merely incidentally affected.

The Supreme Court decision in *Rose's Stores v. Tarrytown Center*, 270 N.C. 201, 154 S.E.2d 320 (1967) is the seminal case in this area. That case held:

> "Title to realty must be directly affected by the judgment, in order to render the action local, and an action is not necessarily local because it incidentally involves the title to land or a right or interest therein, or because the judgment that may be rendered may settle the rights of the parties by way of estoppel. It is the principal object involved in the action which determines the question, and if title is principally involved or if the judgment or decree operates directly and primarily on the estate or title, and not alone *in personam* against the parties, the action will be held local."

*Id.* at 206, 154 S.E.2d at 323 (quoting 92 C.J.S., *Venue* § 23, pp. 723-24).

**FOX HOLDINGS, INC. v. WHEATLY OIL CO.**

[161 N.C. App. 47 (2003)]

In the *Rose's* case, the parties' relationship was one of lessor and lessee. The dispute involved the lessee suing to enjoin the lessor from building on adjacent property, which would interfere with the lessee's rights guaranteed under the lease. The Court had to resolve the dispute by interpreting the lease. Because of this, the *Rose's* Court held that N.C. Gen. Stat. § 1-76 did not apply because an interest in the property was not directly affected, but only incidentally involved. The Court said:

> The judgment plaintiff seeks by its complaint would not alter the terms of the lease, nor would it require notice to third parties. The only result, should plaintiff prevail, would be the personal enforcement of rights granted under a contract of lease. This is a personal right and does not run with the land. *Whatever the outcome of this action, the title to the land would not be affected. The defendants would still be owners, with their title unimpaired by this suit.* The complaint sounds of breach of contract and not for "recovery of real property, or of an estate or interest therein, or for the determination of any form of such right or interest, and for injuries to real property." G.S. 1-76.

*Rose's*, 270 N.C. at 206, 154 S.E.2d at 323 (emphasis added).

We note that a sublease is "an estate or interest" in real property. *See Snow v. Yates*, 99 N.C. App. 317, 392 S.E.2d 767 (1990); *Sample v. Motor Co.*, 23 N.C. App. 742, 209 S.E.2d 524 (1974).

It appears to this Court that the "principal object" of plaintiff's complaint is to have the Asset Purchase Agreement specifically enforced. In its own words, plaintiff's prayed that it was entitled to "an order commanding [defendant] to assign or otherwise convey its lease to the realty described." Such a declaration by the courts would certainly affect the interest in the real property at stake. Moreover, it seems to fail the *Rose's* outcome test in that it cannot be said that "[w]hatever the outcome of this action, the title to the land would not be affected. The defendants would still be owners, with their title unimpaired by this suit." *Rose's*, 270 N.C. at 206, 154 S.E.2d at 323; *see also McCrary*, 77 N.C. App. 796, 336 S.E.2d 103. If plaintiff prevails and is granted specific performance of the Asset Purchase Agreement, then it will be the rightful owner of the interest. If plaintiff loses, then defendant remains the rightful owner. Resolution of this case, then, will ultimately affect the interest in the sublease. It seems clear to this Court, in light of these facts, that local venue,

Carteret County, is proper for this action. However, prior case law by this Court appears, at first blush, to be in disagreement.

There appear to be two cases at odds with each other on how this Court should address the case *sub judice*: *Snow*, 99 N.C. App. 317, 392 S.E.2d 767; and *Bishop v. Lattimore*, 137 N.C. App. 339, 530 S.E.2d 554 (2000).

In *Snow*, the plaintiff contended, much as the current plaintiff does, that N.C. Gen. Stat. § 1-76 was inapplicable because the judgment to which he was entitled, specific performance, operated *in personam* and therefore does not directly affect title to the land. Plaintiff brought a declaratory action to the trial court to determine the existence or non-existence of a lease. This Court, in *Snow*, disagreed.

*Snow* stated that "[w]hen a party brings an action that 'seeks to terminate [a vested estate or interest in real property] and will require the Court to determine the respective rights of the parties with respect to the leasehold interest,' the action falls within the purview of N.C.G.S. § 1-76." *Snow*, 99 N.C. App. at 320-21, 392 S.E.2d at 769 (quoting *Sample*, 23 N.C. App. at 743, 209 S.E.2d at 525). This Court found that "the *'principal object'* of plaintiff's cause of action is a determination of leasehold estate or interest in real property. . . . Our focus is on the effect of the potential judgment on the estate or interest and not on the manner in which the parties achieve the effect." *Id.* at 321, 392 S.E.2d at 769 (emphasis added). The Court continued, "[d]ispute over the existence of a lease substantively differs from a case in which the parties request the court to sort out their obligations either pursuant to a continuing lease or after they terminate the lease." *Id.*

As to the argument by plaintiff that the judgment would operate *in personam* and thus not directly affect the interest in the real property, the *Snow* Court held that

> it is irrelevant that judgment will operate *in personam* if judgment also directly affects title to the property. According to the criteria in our Supreme Court's *Rose's Stores* decision, an action will be transitory only if judgment operates "alone" *in personam* against the parties and not directly on an estate or title. Therefore, we determine that the court was correct in ordering removal to local venue.

*Id.* at 321, 392 S.E.2d at 769-70.

The decision in *Snow* appears to be contradicted by this Court in *Bishop*, 137 N.C. App. 339, 530 S.E.2d 554.

*Bishop* dealt with a suit to enforce a settlement agreement between the parties involved. The enforcement of the agreement would have required, among other things, the assignment of a lease as collateral for payments mandated by the agreement. *Id.* at 344, 530 S.E.2d at 558. The property affected by this suit was located in Mecklenburg County. Plaintiff initially filed this suit in Mecklenburg County.

Defendant made a motion to change the venue from Mecklenburg County to Wake County, where other prior litigation between the parties was pending. The Wake County suit which resulted in the settlement agreement at issue in *Bishop* alleged misconduct on the part of two shareholders of the corporation which owned the underlying real estate. This suit was settled pursuant to the above-referenced agreement. The trial court granted the motion to change venue and plaintiff appealed. Plaintiff argued that, if the trial court ordered specific enforcement of the agreement, it would require the transfer of an interest in real property arguing that N.C. Gen. Stat. § 1-76(1) applied and the cause must be tried in Mecklenburg County.

*Bishop* held that N.C. Gen. Stat. § 1-76 did not mandate that the cause be heard in Mecklenburg County and affirmed the trial court's granting of defendant's motion to change venue. In doing so, the Court said that "plaintiff's argument is focused on a breach of the settlement agreement. Any effect that his claim has on real property is simply incidental rather than direct." *Bishop*, 137 N.C. App. at 345, 530 S.E.2d at 559.

The settlement agreement included the following terms:

1. Park House Realty, Inc. ("Park House") will redeem all of the stock of George F. Lattimore, Jr. ("Lattimore") in Park House, upon the following terms:

   (a) $50,000.00 payable to Lattimore at closing; provided that Lattimore shall have the option to defer receipt of some part or all of said amount until January 1, 1998; and

   (b) $5,000.00 per month principal and interest for a period of 20 years, beginning November 1, 1997, evidenced by the promissory note of Park House in favor of Lattimore or holder[.]

(c) The foregoing obligations of Park House will be secured by a collateral assignment of Park House's interests as tenant under ground lease for Hamilton House apartments, and a collateral assignment of the rents from Hamilton House apartments.

2. Closing hereunder, including execution of all settlement documents, will take place on or before September 30, 1997 (the "Closing Date").

. . . .

4. All claims, cross-claims and counterclaims in the Suit will be dismissed with prejudice.

5. All parties to the Suit will execute a mutual general release of all claims. Without limiting the foregoing, it is expressly agreed that Lattimore will release any and all claims, whether or not presently encompassed in the Suit, against the Estate of George S. Goodyear and its Executor, the George S. Goodyear Family Trust and its Trustee, the George S. Goodyear Marital Trust and its Trustee, the Estate of William J. Darnell and its Executor; Mrs. Elizabeth Darnell in her individual capacity; Mrs. Dorris Goodyear in her individual capacity; William I. Darnell, Park House and its officers and directors.

. . . .

7. The parties acknowledge that all of their agreements reached in mediation, and every part of every agreement so reached, are set out in this memorandum.

*Bishop*, 137 N.C. App. at 341-42, 530 S.E.2d at 557.

*Bishop* sought to enforce this agreement by filing suit in Mecklenburg County. It is apparent that the *principal objective* of the suit in *Bishop* was not resolving a dispute over an interest in real property and any such effect would have been merely incidental to the enforcement of the agreement set forth above. Thus, in the present case, the plaintiff's reliance on *Bishop* is misplaced.

In addition, the Court relied on the fact that specific performance is an equitable remedy that acts *in personam. Id. Rose's Stores* says that:

"Specific performance of a contract for the sale of land is an equitable remedy and is often granted under the equity practice

> when the parties are within the jurisdiction of the court, although the land itself is not within the jurisdiction, since equity acts *in personam* and can compel a conveyance through its control over the person. To carry out the idea of a decree acting *in personam*, it may be necessary to consider a suit for specific performance as being transitory instead of local . . . ."

*Rose's*, 270 N.C. at 204, 154 S.E.2d at 322 (quoting McIntosh, Vol. 1 § 779, p. 416).

The *Rose's* Court and the *Bishop* Court did not finish the quote from the McIntosh treatise, however. What followed seems to address the issue before us:

> To carry out the idea of a decree acting in personam, it may be necessary to consider a suit for specific performance as being transitory instead of local, *but it has been held, when the land is in this state, that this action should be considered local as coming under the statute requiring actions involving an interest in land to be brought in the county where the land is situate.*

McIntosh, Vol. 1 § 779, pp. 416-17 (citing *Vaughan v. Fallin*, 183 N.C. 318, 111 S.E. 513 (1922)); *Councill v. Bailey*, 154 N.C. 54, 69 S.E. 760 (1910). McIntosh was attempting to explain that only where land is in another state does this question of personal jurisdiction arise, and it becomes necessary for a court to compel the execution of a conveyance by decree *in personam. See also Rose's Stores, Inc. v. Bradley Lumber Co.*, 105 N.C. App. 91, 411 S.E.2d 638 (1992); *Mort. Corp. v. Development Corp.*, 2 N.C. App. 138, 162 S.E.2d 623 (1968); *Lamb v. Staples*, 234 N.C. 166, 66 S.E.2d 660 (1951); *White v. Rankin*, 206 N.C. 104, 173 S.E. 282 (1934); *Warren v. Herrington*, 171 N.C. 165, 88 S.E. 139 (1916).

The suit below has as its principal objective the determination of an interest in real property, and therefore local venue, Carteret County, is proper. This being so, the denial of defendant's motion to change venue was error.

Reversed and remanded.

Judge CAMPBELL concurred prior to 31 December 2002.

Chief Judge EAGLES dissents.

EAGLES, Chief Judge, dissenting.

I respectfully dissent. In light of this Court's decision in *Bishop v. Lattimore*, 137 N.C. App. 339, 530 S.E.2d 554 (2000), I vote to affirm the trial court.

To determine whether an action is removable as a matter of right to the county where the land is situated

> [t]he test is this: If the judgment to which plaintiff would be entitled upon the allegations of the complaint will affect the title to land, the action is local and must be tried in the county where the land lies unless defendant waives the proper venue; otherwise, the action is transitory and must be tried in the county where one or more of the parties reside at the commencement of the action.

*Thompson v. Horrell*, 272 N.C. 503, 504-05, 158 S.E.2d 633, 634-35 (1968). Title to real property must be *directly* affected by a judgment

> "to render the action local, and an action is not necessarily local because it *incidentally* involves the title to land or a right or interest therein, . . . *It is the principal object involved in the action which determines the question*, and if title is *principally* involved or if the judgment or decree operates *directly and primarily* on the estate or title, and not alone *in personam* against the parties, the action will be held local." 92 C.J.S., Venue, § 26, pp. 723, 724.

*Rose's Stores v. Tarrytown Center*, 270 N.C. 201, 206, 154 S.E.2d 320, 323 (1967) (emphasis added).

In its complaint, plaintiff sought specific performance of the Asset Purchase Agreement, monetary damages for defendant's alleged breach of the Asset Purchase Agreement, monetary damages for defendant's alleged interference with plaintiff's contracts, monetary damages for defendant's alleged unfair and deceptive trade practices, and monetary damages for defendant's alleged breach of warranty. First, we note that if the trial court were to grant plaintiff's request for monetary damages only, the judgment would not affect title or interest in any land. This Court has held that actions in which the principal object of recovery is monetary damages are not local actions within the meaning of G.S. § 1-76(1). *See Wise v. Isenhour*, 9 N.C. App. 237, 240, 175 S.E.2d 772, 774 (1970).

**FOX HOLDINGS, INC. v. WHEATLY OIL CO.**

[161 N.C. App. 47 (2003)]

Additionally, we note that if the trial court were to grant plaintiff's request for specific performance of the Asset Purchase Agreement, the trial court would have to require defendant to convey, transfer, and deliver to plaintiff (i) its sublease to Store #3, "(ii) all Personal Property Leases; (iii) all machinery, furniture, fixtures, improvements and equipment, including any maintenance or service contracts thereon; (iv) any agreements, contracts, deposits or commitments; (v) all store inventory, opened or unopened, and all fuel inventory; and (vi) all of assets of [defendant] used or useful in the operation of Store #3." Here, I believe that "[a]ny effect that [plaintiff's] claim has on real property is simply incidental rather than direct." *Bishop*, 137 N.C. App. 339, 345, 530 S.E.2d 554, 559.

In *Bishop*, this Court, quoting our Supreme Court in *Rose's*, 270 N.C. 201, 204, 154 S.E.2d 320, 322, stated that " '[t]o carry out the idea of a decree acting *in personam*, it may be necessary to consider a suit for specific performance as being transitory instead of local[.]' " 137 N.C. App. at 345, 530 S.E.2d at 559. In denying the plaintiff's claim that his action must be tried in the county where the affected property is located, this Court held that the plaintiff's claim for specific performance of a settlement agreement, which incidentally involved a transfer of rental property, did not directly affect an interest in land requiring the action be removed as a matter of right under G.S. § 1-76. *Id. Bishop* is analogous to the present case. "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

I believe that the majority's reliance on *Snow v. Yates*, 99 N.C. App. 317, 392 S.E.2d 767 (1990), is misplaced. Unlike the instant case, the plaintiff and the defendants in *Snow* were lessee and lessors respectively. *Id.* In initiating his claim, the plaintiff brought a declaratory action to determine the existence or non-existence of a lease. *Id.* Unlike our present case, the principal object involved in *Snow* was title or interest in real property, and the trial court's determination would *directly and primarily* affect the parties' title or interest in that property. *Id.*

Accordingly, I conclude that plaintiff's principal objective in this action was not resolving a dispute over an interest in real property, but rather, plaintiff's principal objective was the resolution of the Asset Purchase Agreement—which incidentally affected title or inter-

est in Store #3. For the foregoing reasons, I would hold that plaintiff's claims are transitory and not removable as a matter of right to the county in which the land incidentally affected is situated.