PEAK Coastal Ventures, L.L.C. v. SunTrust Bank, 2011 NCBC 13.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 6676

PEAK COASTAL VENTURES, L.L.C.,

Plaintiff,

v.

SUNTRUST BANK and THE LAW FIRM
OF HUTCHENS, SENTER & BRITTON,

Defendants.

**ORDER ON MOTIONS TO DISMISS**

{1}     THIS MATTER is before the Court on the motions to dismiss filed by Defendants SunTrust Bank and The Law Firm of Hutchens, Senter, & Britton.  After considering the submissions by counsel and hearing oral arguments, for the reasons described below, the Court GRANTS Defendants' motions to dismiss the Complaint in its entirety.

> *W. Everette Murphrey for Plaintiff.*
>
> *Williams Mullen by Camden R. Webb for Defendant SunTrust Bank.*
>
> *The Law Firm of Hutchens, Senter & Britton, P.A. by Terry Hutchens for Defendant The Law Firm of Hutchens, Senter & Britton, P.A.*

Gale, Judge.

{2}     Plaintiff PEAK Coastal Ventures, L.L.C. ("PEAK Coastal") is a member-managed limited liability company, which has no single majority member.  Two minority members, Robert Richardson ("Richardson") and Robert Pope ("Pope"), owning fifty percent (50%) of the company, caused this action to be filed in the company's name to challenge action by its third member Jeffrey Stec ("Stec") who owns the remaining fifty percent (50%).  Stec secured two loans in the company's name from Defendant SunTrust

Bank ("SunTrust") without written approval of a majority. Defendant The Law Firm of Hutchens, Senter & Britton, P.A. ("Hutchens, Senter & Britton" or the "law firm") represented PEAK Coastal in those loan transactions. The larger of the two loans was an acquisition and construction loan, secured by a deed of trust, which has been foreclosed upon pursuant to a final order of the Clerk of Superior Court of New Hanover County. The second loan was a line of credit facility.

The Court is called upon by these motions to determine in the first instance whether the minority member/managers of a limited liability company have standing to bring the action in the corporate name, or if not, whether the Complaint, read liberally, states an actionable derivative claim. The standing issue is amplified by the company's public filing which shows, contrary to the Complaint's allegation, that Stec was the only member/manager when the Complaint was filed. If the Court finds sufficient allegations of standing to withstand dismissal, the motions then inquire whether the substantive claims must be dismissed for failure to state a claim upon which relief may be granted. In that regard, Defendants assert that the larger loan cannot be collaterally attacked after a final judicial determination of its validity. As to the line of credit facility, Defendants contend that contract and fiduciary claims must fail, and any unfair and deceptive trade practices claim depends on those underlying claims.

The Court determines that the minority member/managers do not have standing and they have not stated a derivative claim. Assuming standing, the Complaint fails to state actionable claims upon which relief may be granted. Accordingly, the Complaint should be dismissed in its entirety.

## I. Procedural History

{3} Richardson and Pope, each a minority owner of PEAK Coastal, filed this action in the company's name in Forsyth County Superior Court on September 9, 2010. The case was designated as a complex business case

upon Defendant SunTrust's Notice of Designation. The Complaint alleges three claims of relief against Defendant SunTrust, including breach of contract, constructive fraud, and unfair and deceptive trade practices, and one claim against Defendant Hutchens, Senter & Britton, grounded on attorney malpractice. As to the law firm, the Complaint alleges both negligence and gross negligence. Plaintiff seeks compensatory and punitive damages. On November 12, 2010, in lieu of answer, Defendants filed separate motions to dismiss pursuant to Rule 12(b)(6), which contend that the minority member/managers had no standing to bring the corporate action, and that the claims are, in any event, without substantive merit. The law firm additionally challenges venue through its Rule 12(b)(3) motion. Plaintiff ultimately responded to these motions, but sixty-seven (67) days after the deadline. The Court considered the filings and elected not to exercise its power under its local rules to grant the motions summarily. Defendant SunTrust filed a timely reply. The Court heard oral argument on Defendants' motions. Issues beyond the briefs arose at the hearing. The Court then invited all parties to submit a supplemental brief on those issues and set a deadline for doing so. Each Defendant timely filed a supplemental brief. Plaintiff submitted two briefs, both after the deadline. Again, the Court elected to consider fully Plaintiff's late submissions.

## II. Facts

{4}     The facts stated presume the truth of Plaintiff's allegations and grant Plaintiff favorable inferences, while recognizing that Defendants have forecasted that many facts are hotly contested.

{5}     PEAK Coastal is a North Carolina limited liability company formed on December 7, 2006. The Complaint alleges that when the relevant events occurred and the lawsuit was filed, the company was owed by three member/managers according to the following share percentages: Stec (50%),

Richardson (25%), and Pope (25%). (Compl. ¶ 7.)[1] When the company formed, its registered office, registered agent, and principal place of business were located in Forsyth County. When the company's annual report was updated in 2008, those locations were changed to Iredell County. Richardson and Pope reside in Forsyth County. The loans at issue were in connection with property located in and a business to be conducted in New Hanover County and were closed in New Hanover County. On August 26, 2010, pursuant to N.C. Gen Stat. § 57-06-03, the North Carolina Secretary of State administratively dissolved the company for its failure to file annual reports. The company has since been reinstated.

{6}     Defendant SunTrust is a Georgia corporation authorized to transact business in North Carolina. Defendant Hutchens, Senter & Britton is a North Carolina Professional Association with various law offices in North Carolina, including its office in New Hanover County which closed the loan transactions at issue.

{7}     The contract to purchase real property in Wilmington, NC to construct an exercise facility was executed on September 21, 2006. On December 10, 2006, Stec and Richardson approached SunTrust, requesting a $2.16 million loan to purchase and construct the facility. SunTrust issued a March 14, 2007 commitment letter stating conditions for the loan. SunTrust would lend the funds to a limited liability company to be created for the sole purpose of developing the project. (Compl., Ex. A at 1.) Both Stec and Richardson would be guarantors on the loan. (Compl., Ex. A at 2.) As a part of its loan review, SunTrust required the company to provide its operating agreement. (Compl., Ex. A at 7.) Richardson provided SunTrust with copies of the PEAK Coastal Operating Agreement ("Operating Agreement"). The Complaint implies that

---

[1] Defendant Hutchens Senter & Britton offered at oral argument PEAK Coastal's annual report dated September 23, 2008, which lists Stec as the sole member/manager, and urged the Court to consider this evidence outside the pleadings to determine standing. As noted below, the Court finds a lack of standing on other grounds, and in doing so, assumed the truth of the allegation that each of the three members were managers at all relevant times.

the Operating Agreement charged SunTrust and the law firm with knowledge that the company could not be bound to a loan contract without the written approval of a majority interest. (*See* Compl. ¶ 20.)

{8}     PEAK Coastal retained Defendant law firm to handle the title work for the purchase of the real property and to close the loans. On September 12, 2007, PEAK Coastal closed on two loans with SunTrust: the $2.16 million loan for purchase and construction and a line of credit in the amount of $550,000.00. Stec alone signed all the loan documents as "Authorized Member." He was the only signatory on the promissory note secured by a Deed of Trust pledging the real property as collateral for the two loans.

{9}     PEAK Coastal's Operating Agreement[2] contains two paragraphs which control the managers' authority to take action on the company's behalf. The first paragraph of provision 3.1 states, in part: "At any time when there is more than one Manager: (i) any one Manager may take any action permitted to be taken by the Managers, unless the approval of more than one of the Managers is expressly required pursuant to this Agreement or the [N.C. Limited Liability Company] Act . . . ." The next paragraph of the same provision states that for any action:

> No individual Manager, nor any number of Managers that is less than 51% of the Managers in the Company (by virtue of their percentage of membership interest . . .) is/are authorized to bind the Company, contractually, on any matter in which the Company incurs any liability of any type without a majority approval of the Managers.

(*See* Operating Agreement, Article III- Right and Duties of Managers 3.1.)

---

[2] The parties discuss provisions of the PEAK Coastal Operating Agreement. Plaintiff specifically refers to it in the Complaint. (*See* Compl. ¶¶ 6, 20 , 23, 24.) The Court believes that the Operating Agreement is an inherent part of the Complaint's allegations and that its provisions can be reviewed on the Rule 12(b)(6) motion without converting it to a Rule 56 summary judgment motion. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

{10} Plaintiff alleges on information and belief that neither SunTrust's loan officer nor the closing attorney read the Operating Agreement, and that they improperly allowed the loans to close with only Stec executing the loan documents for PEAK Coastal. The Complaint alleges that SunTrust acted "negligently" by failing to follow its own guidelines and allowing a single member to sign for the loans in violation of the Operating Agreement. (Compl. ¶ 23.)

{11} After the closing, Stec ordered a $250,000.00 draw on the new line of credit. The law firm's closing attorney wrote the check from the law firm's trust account payable to Redline Holdings, LLC ("Redline"). Plaintiff alleges, upon information and belief, that Redline is solely owned by Stec and neither has any ownership interest in nor is owed any obligation by PEAK Coastal. Richardson and Pope disclaim knowing that the credit line extended to PEAK Coastal would be used to fund Redline. Plaintiff claims that SunTrust improperly approved this loan without requisite authority from a majority interest of PEAK Coastal. (Compl. ¶ 24.)

{12} The Complaint additionally asserts that the closing attorney knew that the site PEAK Coastal would use for its exercise facility was burdened by a drainage and utility easement for the City of Wilmington measuring fifty (50) feet. The easement was not removed before the closing.

{13} SunTrust foreclosed on the encumbered property. The Clerk of Superior Court of New Hanover County issued an Order Allowing Foreclosure on March 3, 2009, in a special proceeding styled *In the Matter of the Foreclosure of a Deed of Trust Executed by PEAK Coastal Ventures, LLC, Recorded in Book 5231, Pages 134, et seq. on September 13, 2007 in the New Hanover County Registry, by Jerry A. Mannen, Jr., Appointed Substitute Trustee by Instrument Recorded in Book 5367, Pages 2294, et seq. in the New Hanover County Registry,* No. 09 SP 119 ("Foreclosure Proceeding"). In its order, the Clerk found that the debt on which SunTrust sought to foreclose was valid and that PEAK Coastal had adequate notice of the date and time of

the hearing as required by law. Order Allowing Foreclosure on Deed of Trust, ¶¶ 6, 13 (N.C. Super Ct., Mar. 3, 2009). PEAK Coastal did not appeal the Clerk's findings, which then became final. Plaintiff now asks the Court to set aside the foreclosure based on its allegations that the underlying debt was invalid. The foreclosure proceeding did not involve the letter of credit.

## III. Legal Standard

{14}   In order for the Court to have subject matter jurisdiction, the plaintiff must have standing to bring the claim. *See Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391, 617 S.E.2d 306, 310 (2005). "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek an adjudication of the matter." *Woodring v. Swieter*, 180 N.C. App. 362, 366, 637 S.E.2d 269, 274 (2006) (internal quotations omitted). "A party has standing to initiate a lawsuit if he is a real party in interest . . . . A real party in interest is a party who is benefitted or injured by the judgment in the case, . . . [and] by substantive law has the legal right to enforce the claim in question." *Mitchell, Brewer, Richardson, Adams Burge & Boughman, PLLC v. Brewer*, ___ N.C. App. ___, 705 S.E.2d 757, 765 (2011) (internal quotations omitted). If a party lacks standing to initiate an action, then the Court lacks subject matter jurisdiction to hear the matter, and the claims must be dismissed.[3] *See Coker*, 172 N.C. App. at 391, 617 S.E.2d at 310. In *Mangum v. Raleigh Bd. of Adjustment*, the North Carolina Supreme Court stated that when examining standing, allegations should be viewed in the light most favorable to the plaintiff whose standing has been challenged. 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008).

The Court of Appeals has stated the Rule 12(b)(6) standard when the motion to dismiss challenges the standing of a member of a

---

[3] Standing can be raised pursuant to either Rule 12(b)(1) or 12(b)(6). The Defendants have not brought a motion under Rule 12(b)(1). A Court has inherent authority to examine its jurisdiction on its own initiative and, if necessary, can look beyond the pleadings to resolve a jurisdictional issue.

limited liability company which has brought a direct corporate action. The standard inquires:

> Whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief. Rule 12(b)(6) generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery.

*Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (internal quotations and citations omitted). "When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint." *Branch Banking & Trust Co. v. Lighthouse Fin. Corp.*, 2005 NCBC 3 ¶ 8 (N.C. Super. Ct. July 13, 2005).

## IV. Motions to Dismiss

### A. Attack on Standing

{15}    Defendant Hutchens, Senter & Britton argues that Richardson and Pope lack authority to bring this suit because: (1) they are not member/managers authorized to bring the action on behalf of the company; (2) they have not stated a claim for derivative relief; and (3) they cannot comply with N.C. Gen. Stat. § 57C-6-04, which governs the winding up of a dissolved LLC.

### 1. Authority to Bring a Direct Corporate Action

{16}    For Richardson and Pope to have standing to bring a direct action on the company's behalf, the record must contain facts that, if accepted as true,

would demonstrate that they are so authorized. Hutchens, Senter & Britton first argues that Richardson and Pope were not in the first instance managers of PEAK Coastal when the Complaint was filed, and then necessarily had no authority to act as managers. The law firm relies on the company's annual report on file at the time of the Complaint, which lists Stet as the sole member/manager. In direct contrast, Plaintiff's Complaint and supplemental briefing state that Richardson and Pope were managers at the time the Complaint was filed. (Compl. ¶ 1; Supplemental Mem. of Pl. PEAK Coastal Ventures, LLC Regarding the Issues Before the Court on March 24, 2011 and Why Def. SunTrust Bank's Mot. to Dismiss Should be Denied 3.) At oral argument, Plaintiff suggested that Stec improperly and unilaterally changed the official record of the company's membership and handed the Court a Certificate of Reinstatement issued by the North Carolina Secretary of State's Office showing that the company was reinstated on March 10, 2011, on the application of Richardson.[4]

{17} In light of the direct allegations in the Complaint, the Court believes that the *Mangum* standard, which mandates a liberal reading of the record on plaintiff's behalf, does not allow dismissal of the complaint on the sole ground that Richardson and Pope were not managers and therefore had no authority. The determinative issue here is whether, as managers, they had authority to authorize suit when they do not own a majority interest.[5]

---

[4] N.C. Gen. Stat. § 57C-3-25 allows third parties dealing with a limited liability company to "rely conclusively upon its most recent annual report . . . on file with the Secretary of State as to the identity of its managers, except to the extent the person has actual knowledge that a person identified therein as a manager is not a manager." This rule provides an efficient mechanism for firms doing business with companies to determine corporate governance. Because the Court resolves the standing issue on other grounds, it need not resolve any issue of whether the statutory presumption is overcome when the party relying on the statute had actual knowledge that the annual report is inconsistent with the company's operating agreement.

[5] Hutchens, Senter & Britton argues that provision 3.2 of the Operating Agreement lists only Stec and Richardson as managers so that there could be no majority without Stec's participation. However, Schedule A of the Operating Agreement lists all three men as

{18}    This then leads to Defendant Hutchens, Senter & Britton's further argument in the alternative that the Operating Agreement requires a fifty-one percent (51%) ownership interest to initiate any lawsuit on PEAK Coastal's behalf, and the Complaint must be dismissed because the Complaint itself discloses that the two minority members do not together own the requisite percentage.  Plaintiff acknowledges that a group representing a fifty-one (51%) membership interest is required to bind the company contractually.  (*See* Operating Agreement ¶ 3.1.)  Indeed, that is the basis of the challenge to the loan agreements.  But Plaintiff argues that this provision does not control the right of the minority members to bring this action.  The Court has struggled to define the basis on which Richardson and Pope assert their authority to bring the action in the name of the corporation.  It appears that they argue, without reference to the Operating Agreement but relying on *Crouse v. Mineo*, 189 N.C. App. 232, 658 S.E.2d 33 (2008), that there is "an inherent right for minority members to sue on behalf of the corporation to protect their individual interests . . . ."  (Pl.'s Resp. Br. 4.)  *Crouse* did not establish such an inherent right.  It recognized a default statutory right of a majority of managers that can be overridden by an operating agreement as a matter of contract.  While Richardson and Pope may together constitute a majority of the managers that would have statutory rights in the absence of a contrary operating agreement, here there is such an agreement and it requires a majority of ownership which they do not have.

{19}    In *Crouse*, the North Carolina Court of Appeals considered whether one of two member/managers with equal ownership of a limited liability company had standing to bring a suit on behalf of the corporation.  *See* 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008).  The plaintiff relied on agency principles contained in N.C. Gen. Stat. § 57C-3-23 to argue that a manager

---

member/managers, and as noted, the Complaint alleges that PEAK Coastal had three member/managers when the suit was filed.

has "inherent authority to authorize lawsuits to protect the LLC's interests." *Id.* The Court determined that filing a lawsuit is a management decision not related to the company's usual course of business. *See id.* at 239, 658 S.E.2d at 37. "An act of a manager that is not apparently for carrying on the usual course of the business of the limited liability company does not bind the [LLC] unless authorized in fact or ratified by the limited liability company." N.C. Gen. Stat. § 57C-3-23.

{20} The Court noted that limited liability companies are primarily creatures of contract, and the default provisions of Chapter 57C of the North Carolina General Statutes ("the LLC Act") "can be changed in virtually any way the parties wish . . . ." *Id.* at 237, 658 S.E.2d at 36 (quoting Russell M. Robinson, II, Robinson on North Carolina Corporate Law § 34.01, at 34-2–34-3 (rev.7th ed. 2006)). Because there was no written operating agreement that would govern the dispute, however, the Court looked to the default provisions of the LLC Act to determine who could make a management decision. *See id.* Under the statute, to be authorized, "management decisions shall require the approval, consent, agreement, or ratification of a majority of the managers." N.C. Gen. Stat § 57C-3-20(b). As a result, Crouse, as one of two managers, did not have authority to bring suit in the corporate name.

Unlike Crouse, Richardson and Pope do constitute a majority of the members. But, the Operating Agreement, unlike the default statutory provision, does not authorize management by a majority of members; it requires a majority of ownership.

{21} In attacking SunTrust and the law firm, Richardson and Pope rely on Provision 3.1 of the Operating Agreement, which states that on "any action," no "number of Managers that is less than 51% of the Managers in the Company (by virtue of the percentage membership interest . . .) . . . are authorized to bind the Company, contractually, on any manner in which the Company incurs any liability of any type without a majority approval of the Managers."

Richardson and Pope apparently rely on another provision of the same section to argue that they have authority to initiate litigation in the company's name even though they do not own a majority interest. As noted, the opening paragraph to Section 3.1 states, in part: "At any time when there is more than one Manager: (i) any one Manager may take any action permitted to be taken by the Managers, unless the approval of more than one of the Managers is expressly required pursuant to this Agreement or the Act . . . ." (Operating Agreement 3.1.) The Court concludes that this language must be read in harmony with the prior sentence, which allows managers to make decisions and perform acts "customary or incident to the management of the Company's Business." (Operating Agreement 3.1.) As recognized by *Crouse,* filing a lawsuit is not an act that relates to the normal business operations of the company. It follows that the opening paragraph to Section 3.1 does not control Richardson and Pope's authority, but rather the filing of suit falls within the provisions of the Operating Agreement that require a majority ownership interest.[6]

{22}  Provision 3.1 should control even if filing a suit is not expressly mentioned in that provision as a contract imposing liability on the corporation, therefore requiring the approving of a majority of ownership interest. As corporations cannot represent themselves in a lawsuit, PEAK Coastal must obtain legal counsel to file suit. In order to obtain counsel, undoubtedly, the company must enter into a contract with its attorney resulting in liability. In order to authorize the suit, the managers must authorize the contract to gain legal services.

The Court also notes that the terms of the Operating Agreement alter the method for calculating a "majority" from a simple majority of managers to a weighted majority of the managers "by virtue of their percentage

---

[6] Furthermore, interpreting that language to allow individual managers to initiate a lawsuit would create a practical dilemma. If any manager can take <u>any</u> action that managers are permitted to take, then once a lawsuit is filed by any member, any other member could act for the corporation to dismiss it.

membership interest." (Operating Agreement 3.1.) Under these terms, and with the membership allotment described in the Complaint, Stec must participate in the decision to authorize a lawsuit. The Complaint makes clear that he did not.

{23} In sum, Richardson and Pope had no authority as managers to file a direct corporate action.

2. Standing for a Derivative Action

{24} For Richardson and Pope to have brought an actionable derivative claim, the record must contain facts that, if accepted as true, would demonstrate that they complied with N.C. Gen Stat. § 57C-8-01. In order for a member of a limited liability company to bring a shareholder's derivative action, (1) the plaintiff must be without authority to cause the limited liability company to sue in its own right, and (2) the plaintiff must be "a member of the limited liability company at the time of bringing the action, and . . . [must be] a member . . . at the time of the transaction of which the plaintiff complains . . . ." N.C. Gen Stat. § 57C-8-01 (a). Additionally, "[t]he complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the managers, directors, or other applicable authority and the reasons for the plaintiff's failure to obtain the action, or for not making the effort." N.C. Gen Stat. § 57C-8-01 (b). Finally, Rule 23(b) of the North Carolina Rules of Civil Procedure requires that a complaint alleging a derivative action be verified.

{25} Richardson and Pope satisfy the first element of N.C. Gen Stat. § 57C-8-01 (a) based on the Court's determination that they were without authority to cause PEAK Coastal to initiate this suit. They satisfy the second element of the statute by their allegation that Richardson and Pope were member/managers of PEAK Coastal at relevant times. (*See* Compl. ¶¶ 1, 7,

16, 11, 20.)[7] Even so, in order to allow this action to proceed as a derivative action, the Court must find in the <u>Complaint</u> the particular efforts Richardson and Pope undertook to obtain the action they desired. *See* N.C. Gen Stat. § 57C-8-01 (b). The Court has utilized the liberal approach in *Crouse*, which recognized that courts may find allegations in the Complaint that could support a derivative action even though a plaintiff did not intend to proceed derivatively and did not expressly make the allegations in the context of a derivative action. *See* 189 N.C. App. at 244, 658 S.E.2d at 40. Those allegations are not there. The Complaint alleges that Defendants allowed two loans to be closed by one member of the company in violation of the company's Operating Agreement, that Richardson and Pope were not "aware of or invited" to the closing, and that Defendants allowed a $250,000.00 check to be paid out of the newly established line of credit to Stec's Redline Holdings, LLC. (Compl. ¶¶ 20, 23, 24.) There is no mention of the members demanding that Stec reimburse the company or authorize the suit. Plaintiff never alleges that Richardson and Pope even asked Stec to explain his actions. The Complaint does not satisfy the requirements of N.C. Gen. Stat. §57C-8-01.

{26} Additionally, Richardson and Pope failed to verify the Complaint, so that it does not meet the Rule 23(b) requirement.

{27} In sum, the Complaint does not state an actionable derivative claim.

### 3. Plaintiff's alleged failure to comply with N.C. Gen. Stat. § 57C-6-04

{28} Finally, Hutchens, Senter & Britton repackages its standing argument as a statutory claim under N.C. Gen. Stat. § 57C-6-04. It argues that Richardson and Pope lack the authority to bring this action because they were not managers when the suit was filed and the company was then in

---

[7] The Complaint does not specifically allege they were such managers at the time the Complaint was filed, but that is the clear inference, which Plaintiff has clearly stated in its briefs and oral argument. The Court accepts for purposes of this motion that there are adequate pleadings to support this element.

dissolution. The Secretary of State administratively dissolved PEAK Coastal on August 26, 2010. The filing of a certificate of dissolution by the Secretary of State causes the limited liability company to be dissolved, and "its affairs shall be wound up." N.C. Gen. Stat. § 57C-6-01 (5). Absent a provision in the operating agreement or articles of organization to the contrary, only the managers of a company may wind up a company's affairs on dissolution. N.C. Gen. Stat. § 57C-6-04. Neither PEAK Coastal's Operating Agreement nor its articles of organization alter that statutory provision. Plaintiff filed the Complaint two weeks after its administrative dissolution.

{29} The law firm again relies on the annual report on file when Plaintiff initiated the lawsuit, which lists Stet as its only manager, and argues that the annual report conclusively establishes Stec as the only manager of the company. Because Stec did not authorize the action as part of the business's winding up, it urges the Court to dismiss the Complaint for Plaintiff's failure to comply with N.C. Gen. Stat. § 57C-6-04.

{30} This argument fails for the same reasons as described above. The Court has accepted for purposes of these motions that Richardson and Pope were managers of PEAK Coastal at all relevant times.


{31} In sum, Defendant Hutchens Senter's motion to dismiss for Plaintiff's lack of standing is GRANTED on the grounds that no direct corporate action was authorized by managers representing a majority in interest and the Complaint states no actionable derivative claim.


### B. Motion to Dismiss for Improper Venue

{32} Defendant Hutchens, Senter & Britton moved to dismiss pursuant to Rule 12(b)(3) for improper venue. Plaintiff contends that venue in Forsyth County is proper in this action pursuant to N.C. Gen. Stat. §§ 1-79 and 1-82 because two of Plaintiff's member/managers reside there. Defendant law firm argues that the Court must apply N.C. Gen. Stat. § 1-76 because

Plaintiff seeks to recover title to real property. N.C. Gen. Stat. § 1-76 requires that actions for the "[r]ecovery of real property, . . . or for the determination in any form of such right or interest" must be tried in the county in which the real property lies. "Pursuant to this statute, an action must be tried in the county where the property is located when the judgment to which a plaintiff would be entitled upon the allegations of the complaint will affect the title to land." *Fox Holdings, Inc. v. Wheatley Oil Co.*, 161 N.C. App. 47, 52, 587 S.E.2d 429, 432 (2003). Through its breach of contract claim, Plaintiff asks the Court to set aside the SunTrust foreclosure, arguing there is no valid note upon which to sue. If Plaintiff were to succeed in this cause of action, its relief would undue the foreclosure, thereby affecting title to real property located in New Hanover County. An action containing Plaintiff's collateral attack on a foreclosure in New Hanover County cannot be brought in Forsyth County.

The Rule 12(b)(3) motion is mooted by the Court's ruling on the Rule 12(b)(6) motions. While the Court believes venue is improper as to any action to set aside the foreclosure, if venue were the sole dispositive issue, the Court would be inclined either to deny the motion because the claim regarding the foreclosure is being dismissed, or, alternatively, to consider its authority to transfer venue while maintaining the case under the authority granted to the Business Court.

### C. Breach of Contract Claim Against SunTrust

{33} Defendant SunTrust moves to dismiss Plaintiff's breach of contract claim pursuant to Rule 12(b)(6). "The elements of a claim for breach of contract are: (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). In order for Plaintiff to support its claim for breach of contract, it must identify an agreement between it and SunTrust, and it must demonstrate that SunTrust failed to perform a duty arising under that agreement. The

Court has separately examined the Complaint with respect to SunTrust's attack on the line of credit agreement and the acquisition and construction agreement. As to both, Plaintiff's claims are founded upon the premise that Stec had no authority to enter a contract on behalf of PEAK Coastal. (*See* Compl. ¶¶ 23, 26.) It alleges that any contract executed on the company's behalf with Defendant SunTrust cannot be valid. However, that issue has been finally resolved judicially as to the acquisition and construction loan.

{34} As to the line of credit agreement, which was not the subject of the foreclosure action, SunTrust asserts that it cannot be liable for breach of contract if the Court accepts the Complaint's allegation that there was no valid contract. That is, the Complaint's attack on the line of credit as an invalid contract precludes the inconsistent assertion that SunTrust breached its obligations under such a contract.

The Complaint identifies Defendant SunTrust's breach as its continued violation of "the terms and conditions of the Operating Agreement by allowing and instructing that all documents be signed by Jeff Stec only and also in the credit line loan the bank authorized the issuance of a $250,000.00 check off said credit line made payable to Redline Holdings, LLC." (Compl. ¶ 24.) However, SunTrust was not a party to the company's Operating Agreement. The only agreements with SunTrust that Plaintiff identifies in the Complaint are "contract[s] for the loans which included purchase/construction and line of credit to [PEAK Coastal] for their [sic] business plan." (Compl. ¶ 22.) There are no allegations that SunTrust breached any duty arising under those agreements. In fact, there is no dispute that SunTrust provided the funds it contemplated in its commitment letters. As Plaintiff fails to allege SunTrust's breach of any mutual

agreement, its breach of contract claim as it relates to the line of credit agreement must fail.[8]

{35}    As to the purchase and construction loan, Defendant SunTrust argues that Plaintiff's breach of contract claim is barred by *res judicata*. PEAK Coastal alleges that its contract with SunTrust is invalid, and it asks the Court "to have the foreclosure set aside because one of the issues of any foreclosure is [that] there exists a 'valid note.'" (Compl. ¶ 26.) SunTrust shows that the validity of the $2.1 million debt for purchase and construction was established in a foreclosure proceeding in New Hanover County, and it argues that the ruling of the Clerk of Superior Court as to its validity bars PEAK Coastal from relitigating the validity of the underlying debt.

When a party proceeds with a foreclosure sale pursuant to a deed of trust, "issues decided thereunder as to the validity of the debt . . . are *res judicata* and cannot be relitigated. *Phil Mechanic Constr. Co. v. Haywood*, 72 N.C. App. 318, 322, 325 S.E.2d 1, 3 (1985). The doctrine of *res judicata* requires: (1) a final judgment on the merits; (2) identity of the cause of action in both the prior and present suit; and (3) identity of parties or their privies in both suits.

Here, there is no dispute that on March 3, 2009, the Clerk of Superior Court of New Hanover County entered an Order Allowing Foreclosure of Deed of Trust, in which the Clerk found that the loan by SunTrust in the original face amount of $2.16 million "is a valid debt of which SunTrust, as holder, is seeking foreclosure of the Deed of Trust." Order Allowing Foreclosure on Deed of Trust, ¶¶ 1, 6 (N.C. Super Ct., Mar. 3, 2009). "A judgment entered by a clerk of the Superior Court in a special proceeding in which such clerk has jurisdiction, will stand as a judgment of the court, if not excepted to and reversed or modified on appeal, as allowed by statute." *In re*

---

[8]  If the breach of contract allegation related to the purchase and construction loan were not governed by the *res judicata* analysis below, the Court believes the claim would fail based on the analysis above.

*Atkinson-Clark Canal Co.*, 234 N.C. 374, 377, 67 S.E.2d 276, 276 (1951). The clerk entered a judgment on the merits. After the ten (10) day appeal period expired without appeal, a foreclosure sale took place. (*See* Mem. of Law in Supp. of Def. SunTrust Bank's Mot. to Dismiss, Ex. B.) When plaintiffs do not "perfect an appeal of the order of the Clerk of Superior Court, the clerk's order is binding and plaintiffs are estopped from arguing those same issues . . . ." *Phil Mechanic Constr.* Co, 72 N.C. App. at 322, 325 S.E.2d at 3. PEAK Coastal's failure to appeal the clerk's decision made the judgment final.

{36} Though contained within a breach of contract claim, Plaintiff challenges the validity of its debt under the acquisition and construction loan. This is the same issue decided in the foreclosure proceeding. Both PEAK Coastal and SunTrust were parties both to the foreclosure action and to this suit. Thus, the doctrine of *res judicata* bars Plaintiff's attempt to challenge the validity of the $2.16 million debt.

{37} At oral argument, Plaintiff nevertheless invited the Court to exercise its equitable power to undue the foreclosure through Plaintiff's collateral attack. The Court has no such power. If

> the trustee faithfully performs his duties under the power of sale then there is no irregularity in the sale which would allow a court of equity to set aside the sale. "It is a uniform rule that where a decree of foreclosure has been rendered and a sale of property has been made thereunder, it cannot be attacked collaterally and the title thus acquired overthrown, except on the ground that the sale was void." 55 Am. Jur. 2d *Mortgages* Sec. 830 (1971).

*Griffin v. Roberts*, 88 N.C. App. 734, 737, 364 S.E.2d 698, 700 (1988).

### D. Constructive Fraud Claim Against SunTrust

{38} Defendant SunTrust moves to dismiss Plaintiff's constructive fraud claim pursuant to Rule 12(b)(6). Constructive fraud "arises where a confidential or fiduciary relationship exists, which has led up to and surrounded the consummation of the transaction in which a [party] is alleged

to have taken advantage of his position of trust to the hurt of the [claimant]." *Forbis v. Neal*, 361 N.C. 519, 528, 649 S.E.2d 382, 388 (2007) (internal citations omitted). Plaintiff alleges that it and SunTrust were fiduciaries with respect to the commercial loan closing in which they participated. (Compl. ¶¶ 30–31.) A fiduciary relationship exists where "there has been special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 60 418 S.E.2d 694, 699 (1992). An "ordinary debtor-creditor relationship generally does not give rise to such special confidence: the mere existence of a debtor-creditor relationship . . . does not create a fiduciary relationship." *Id.* at 61, 418 S.E.2d at 699 (internal quotations and brackets removed).

Plaintiff has pled no circumstances that would require SunTrust to act with regard to the interests of PEAK Coastal. The two were parties to a contract in which SunTrust had a duty to lend money, and PEAK Coastal had a duty to repay that sum with interest. SunTrust's alleged knowledge of PEAK Coastal's business plan is standard in the banking industry as part of necessary due diligence. This knowledge alone does not give rise to a relationship that imparts a fiduciary duty. Because Plaintiff has failed to plead facts from which the Court could find that a fiduciary relationship between PEAK Coastal and SunTrust existed, Plaintiff's constructive fraud claim cannot survive.

E. Unfair and Deceptive Trade Practices Claim Against SunTrust

{39} SunTrust moves to dismiss Plaintiff's unfair and deceptive trade practices claim pursuant to Rule 12(b)(6). To prove unfair and deceptive trade practices, a plaintiff must show: (1) that the defendant committed an unfair or deceptive act or practice; (2) which was in or affecting commerce; and (3) the plaintiff was damaged by the act. *First Atlantic Mort. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998). Under

N.C. Gen Stat. § 75-1.1, "a trade practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers. A trade practice is deceptive if it has the capacity or tendency to deceive." *Thompson*, 107 N.C. App. at 61, 418 S.E.2d at 700 (internal quotations and citations omitted). A mere breach of contract, even if intentional, cannot support a claim for unfair and deceptive trade practices absent substantial aggravating circumstances. *Id.* at 62, 418 S.E.2d at 700. The Court agrees that Plaintiff has not pled any aggravating circumstances that would elevate a normal breach of contract dispute to a claim covered by N.C. Gen. Stat. § 75-1.1. A loan officer making a mistake in not reading PEAK Coastal's Operating Agreement is not such a circumstance. (*See* Compl. ¶¶ 23, 34.) Plaintiff argues in its supplemental filings that SunTrust committed an unfair and deceptive trade practice by "inequitably asserting [its] superior power while dealing with a subset of the population known to be necessitous and less sophisticated than borrowers in the prime market." (Supplemental Mem. of Pl. PEAK Coastal Ventures, LLC Regarding the Issues Before the Court on March 24, 2011 and Why Def. SunTrust Bank's Mot. to Dismiss Should Be Denied 10.) Plaintiff also acknowledges in that supplemental memorandum that Richardson and Pope are general contractors and that Stec is a "business man who ran numerous exercise clubs throughout North Carolina," and admits its allegation that SunTrust "negligently" failed to follow the Operating Agreement when allowing the loans to close is no more than an allegation of simple negligence. (Supplemental Mem. of Pl. PEAK Coastal Ventures, LLC Regarding the Issues Before the Court on March 24, 2011 and Why Def. SunTrust Bank's Mot. to Dismiss Should Be Denied 10.) There is no adequate pleading of misuse of superior power that rises to the level of an actionable claim for unfair and deceptive trade practices.

{40} In sum, for the various reasons stated, Defendant SunTrust's motion to dismiss the Complaint is GRANTED.

## F. Other claims

{41}    At oral argument and in supplemental filings, both Defendants made additional arguments to dismiss Plaintiff's claims.  In order to rule on these issues, the Court would have to but will not consider facts beyond those alleged in the Complaint.

## V. Conclusion

{42}    For the reasons noted above, it is HEREBY ORDERED that the Complaint is dismissed in its entirety with prejudice.

This, 5th day of May, 2011.