State v. Orion Processing, LLC, 2015 NCBC 102.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 7161

STATE OF NORTH CAROLINA, *ex rel.* ROY COOPER, Attorney General, and THE NORTH CAROLINA STATE BAR,

        Plaintiffs,

    v.

ORION PROCESSING, LLC, d/b/a World Law Processing, World Law Debt, World Law Group, and World Law Plan; SWIFT ROCK FINANCIAL, INC., d/b/a World Law Debt, World Law Group, and World Law Plan; DERIN ROBERT SCOTT; BRADLEY JAMES HASKINS, d/b/a World Law Group; and WORLD LAW SOUTH, INC., d/b/a World Law Group,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER & OPINION

{1}     THIS MATTER is before the Court on Defendant World Law South, Inc.'s ("WLS") Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim upon Which Relief Can Be Granted ("Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The Motion is DENIED.

*North Carolina Department of Justice by M. Lynne Weaver and Michael T. Henry for Plaintiff State of North Carolina.*

*The North Carolina State Bar by David R. Johnson for Plaintiff The North Carolina State Bar.*

*Carlton Law, PLLC by Alfred P. Carlton, Jr. for Defendant World Law South, Inc. at the filing of the Motion. Counsel has since been allowed to withdraw.*

Gale, Chief Judge.

## I.    BACKGROUND

{2}    Plaintiffs filed their original Complaint on May 22, 2013, bringing claims of (1) unlawful debt adjusting, (2) unfair and deceptive trade practices, and (3) unauthorized practice of law ("UPL") against Swift Rock Financial, Inc. d/b/a World Law Debt a/k/a World Law Group; Orion Processing, LLC d/b/a World Law Processing; and Derin Scott (collectively "World Law Defendants"), and Global Client Solutions, LLC.  The allegations in the Complaint centered on a scheme by which Defendants would, among other things, hold themselves out as a global law firm, promise to settle consumers' debt, provide frivolous debt-settlement advice to consumers, supply documents and advice for consumers to file in court proceedings, and accept payment for these services.

{3}    On June 4, 2013, Hon. G. Bryan Collins, Jr. entered a preliminary injunction order to enjoin the World Law Defendants, "together with their officers, agents, employees, attorneys, and all persons acting in concert with them" from, *inter alia*, engaging in any debt settlement practices.  Preliminary Injunction Order, *State v. Swift Rock Fin., Inc.*, No. 13 CVS 7161 (N.C. Super. Ct. June 4, 2013), http://www.ncbusinesscourt.net/TCDDotNetPublic/default.aspx?CID= 3&caseNumber=13CVS7161.

{4}    On August 6, 2013, WLS was formed by filing articles of incorporation with the North Carolina Secretary of State.

{5}    Plaintiffs filed their Amended Complaint on June 25, 2014, which added Bradley James Haskins and WLS as defendants, and added a claim of civil conspiracy against all Defendants named in the Amended Complaint.

{6}    WLS filed a notice of designation to designate this action as a mandatory complex business case under Rule 2.2 of the General Rules of Practice of the Superior and District Courts ("General Rules of Practice") on July 8, 2014. Plaintiffs opposed the designation on August 6, 2014.  Chief Justice Mark Martin

designated this matter an exceptional case under Rule 2.1 of the General Rules of Practice and assigned it to the undersigned on October 6, 2014.

{7} WLS filed its Motion on October 10, 2014, but did not file its brief in support of the Motion until October 29, 2014. The Motion was fully briefed on December 1, 2014. WLS is no longer represented by counsel. On February 18, 2015, WLS filed articles of dissolution with the Secretary of State of North Carolina, and the Court has been advised that WLS no longer operates an active business. The Court decides the Motion without oral argument pursuant to Business Court Rule 15.4(a).

## II.    ANALYSIS

{8} To evaluate a motion to dismiss under Rule 12(b)(6), the Court asks "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court must liberally construe Plaintiffs' Amended Complaint, and should not dismiss it unless it appears beyond a doubt that Plaintiffs could prove no set of facts in support of their claims that would entitle Plaintiffs to relief. *See Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008). The Court does not provide a full recounting of Plaintiffs' allegations here, but instead notes only those allegations relevant to its disposition of WLS's Motion.

{9} WLS argues that all of Plaintiffs' claims against WLS depend either on Plaintiffs' claim that WLS is involved in unlawful debt adjusting under section 14-423 of the general statutes or on Plaintiffs' UPL claim, brought under sections 84-2.1, 84-4, or 84-5 of the general statutes. WLS asserts that Plaintiffs' Amended Complaint fails to allege that WLS receives any consideration in advance of the services that it performs and that Plaintiffs must allege as such in order for WLS's activities to fall within the definition of "debt adjusting" under section 14-423. WLS seems to argue this based on a strained reading of paragraph 141 of the Amended

Complaint, in which Plaintiff quotes a portion of subsection 14-423(2) that defines "debt adjusting" as including activities where payment is received in advance of debt settlement. Without further elaboration, WLS summarily asserts that "[n]othing in the Amended Complaint has been alleged that would create a claim for UPL against World Law South," (Def. WLS Reply Br. 4.), citing Rule 5.5(d)(2) of the Revised Rules of Professional Conduct of the North Carolina State Bar ("Rules of Professional Conduct") and its associated comments in an effort to support an argument that WLS may use the services of out-of-state attorneys to provide services to consumers within North Carolina.

{10} The Court's determination that the Amended Complaint survives WLS's Motion is easily made. The merits of the Motion deserve little analysis. But, this Court is statutorily required to issue an opinion explaining its reasoning for ruling upon a motion made pursuant to Rule 12(b)(6). *See* N.C. Gen. Stat. § 7A-45.3 (2013).

## A. Unlawful Debt Adjusting

{11} Plaintiffs' Amended Complaint alleges that WLS was formed at the direction of Defendant Haskins for the purpose of avoiding the preliminary injunction entered by Judge Collins prior to WLS's addition to the case, and to enable Defendants to continue conducting their debt-settlement activities in North Carolina under a new corporate identity that is free of the injunction. Defendant Haskins was a member of WLS's initial board of directors and is alleged to be the principal managing agent of WLS and to have "directed, controlled, participated in, and had knowledge of" WLS's activities. (Am. Compl. ¶ 41.) The Amended Complaint further alleges that WLS is a continuation of the same entities that had previously operated under the World Law name, in addition to being a separate member of a civil conspiracy perpetrated by the World Law Defendants.

{12} The North Carolina Debt Adjustment Act (the "Act") provides a cause of action to the Attorney General to "enjoin, as an unfair or deceptive trade practice, the continuation of any debt adjusting business or the offering of any debt adjusting

services." N.C. Gen. Stat § 14-425 (2013). If a defendant is found to have violated the Act, the Court may, in addition to enjoining the activity, award civil penalties of up to $5,000.00 per violation. *See* N.C. Gen. Stat. § 75-15.1 (2013). WLS makes no effort to claim an exception under section 14-426.

{13} Contrary to the assumption that WLS seems to make in its brief, it is immaterial that the Amended Complaint only quotes certain language from section 14-423, which defines "debt adjusting," because Plaintiffs' unlawful debt adjusting claim is based on violations of the Act as a whole. Section 14-423(2)'s full text includes within its definition of "debt adjusting" the collection of fees at *any time* if those fees are paid as consideration for debt adjustment services:

> "Debt adjusting" means entering into or making a contract, express or implied, with a particular debtor whereby the debtor *agrees to pay a certain amount of money periodically to the person engaged in the debt adjusting business and that person, for consideration,* agrees to distribute, or distributes the same among certain specified creditors in accordance with a plan agreed upon. Debt adjusting includes the business or practice of any person who holds himself out *as acting or offering or attempting to act for consideration as an intermediary* between a debtor and his creditors for the purpose of settling, compounding, or in any way altering the terms of payment of any debt of a debtor, and *to that end receives money or other property from the debtor,* or on behalf of the debtor, for the payment to, or distribution among, the creditors of the debtor. Debt adjusting also includes the business or practice of debt settlement or foreclosure assistance whereby any person holds himself or herself out as acting for consideration as an intermediary between a debtor and the debtor's creditors for the purpose of reducing, settling, or altering the terms of the payment of any debt of the debtor, whether or not the person distributes the debtor's funds or property among the creditors, and receives a fee or other consideration for reducing, settling, or altering the terms of the payment of the debt in advance of the debt settlement having been completed or in advance of all the services agreed to having been rendered in full.

*Id* § 14-423(2) (emphasis added).

{14} The Amended Complaint is replete with allegations that Defendants, including WLS, have collected fees for debt settlement services both in advance of and subsequent to the completion of some or all of Defendants' debt adjusting

services. The Amended Complaint also contains allegations that tie WLS to the acts of the other Defendants. (*See, e.g.*, Am. Compl. ¶ 3 (stating that "[World Law Defendants] have collected illegal advance fees for debt settlement services"); Am. Compl. ¶ 5 (noting that the World Law Defendants sometimes collect fees for a year or more before paying consumers' creditors); Am. Compl. ¶ 18 (alleging that the World Law Defendants have collected more than sixty-four percent of all consumer payments as fees); Am. Compl. ¶ 88 (alleging that the World Law Defendants collect the majority of their fees prior to any attempt to negotiate settlements with creditors); *see also, e.g.*, Am. Compl. ¶¶ 89–92, 94, 142, 148, 157.)

{15} These allegations are sufficient to state a claim for unlawful debt adjusting for which relief can be granted.

## B. UPL

{16} In its reply, WLS states that "[i]t is not necessary for World Law South to brief or further explain its Motion to Dismiss as to the claim asserted by Plaintiffs for Unauthorized Practice of Law." (Def. WLS Reply Br. 3.) Although WLS's compliance with Business Court Rule 15.3 is dubious, the Court proceeds to examine whether Plaintiffs' have adequately stated a UPL claim against WLS. WLS did not aid the Court's effort. Without further elaboration, WLS cites Rule 5.5 of the Rules of Professional Conduct, which governs the Unauthorized Practice of Law, but makes no attempt to apply that rule to the specific allegations in the Amended Complaint. These bare-bones assertions are insufficient to support the Motion.

{17} North Carolina prohibits the practice of law by persons or associations that have not been admitted and licensed by the North Carolina State Bar. N.C. Gen. Stat. § 84-4 (2013). The phrase "practice law" is broadly defined, and the prohibitions on the practice of law include appearing as an attorney before a judicial body, holding oneself out as being competent to give legal advice, preparing legal documents, or otherwise providing the services of a lawyer. *See id.* § 84-2.1. These prohibitions generally apply to corporations as well. *Id.* § 84-5.

{18}    Plaintiffs allege that WLS is a North Carolina corporation and is not a law firm, so that any efforts of WLS to hold itself out as a law firm or to practice law within North Carolina are in violation of chapter 84.  The Amended Complaint contains extensive, specific allegations against the World Law Defendants and WLS individually that, taken as true, state a UPL claim against WLS.  (*See, e.g.*, Am. Compl. ¶ 6 (alleging that the World Law Defendants claim that their services are attorney-based and that they are a global law firm); Am. Compl. ¶ 8 (noting that no consumers have ever spoken to a North Carolina-licensed attorney, and that almost all services are performed by non-attorneys); Am. Compl. ¶ 68 (claiming that the World Law Defendants have sent solicitations to consumers that claim that they are legal advocates that are licensed in North Carolina); Am. Compl. ¶ 70 (quoting a representation on a World Law-related website that states that defendants are a "global law firm," and that consumers will be assigned legal assistants, a team of attorneys, and a "state and federal attorney"); *see also, e.g.*, Am. Compl. ¶¶ 71–73, 76–78, 82–84, 95–103, 109–10, 111–28, 132, 134, 135.)

{19}    These allegations are sufficient to state a UPL claim against WLS.

### III.    CONCLUSION

{20}    WLS's Motion to Dismiss is DENIED.

{21}    This Order & Opinion shall be served on WLS by service on its registered agent, CT Corporation System, at 150 Fayetteville Street, Box 1011, Raleigh, North Carolina 27601.


IT IS SO ORDERED, this the 9th day of November, 2015.


/s/ James L. Gale
_____
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases